HELEN R. KRAMER, *ET AL.*, PLAINTIFFS-APPELLANTS, v.
BOARD OF ADJUSTMENT, SEA GIRT, AND THE BOR-
OUGH OF SEA GIRT, DEFENDANTS, AND STOCKTON
HOTEL, INC., DEFENDANT-RESPONDENT. CONSOLI-
DATED WITH JOHN J. CROSS, *ET AL.*, PLAINTIFFS-
APPELLANTS, v. BOARD OF ADJUSTMENT OF SEA GIRT
AND THE BOROUGH OF SEA GIRT, DEFENDANTS, AND
STOCKTON HOTEL, INC., DEFENDANT-RESPONDENT.

Argued March 30 and April 12, 1965—Decided June 28, 1965.

274

*Mr. William L. Dill, Jr.* argued the cause for plaintiffs-appellants Helen R. Kramer, *et al.* (*Mr. William T. Sutphin,* on the brief; *Messrs. Stryker, Tams & Dill,* attorneys).

*Mr. William R. Blair, Jr.* argued the cause for plaintiffs-appellants John J. Cross, *et al.* (*Messrs. Parsons, Canzona, Blair & Warren,* attorneys).

*Mr. Morris M. Schnitzer* argued the cause for defendant-respondent Stockton Hotel, Inc. (*Mr. Waldron Kraemer,* on the brief; *Messrs. Kasen, Schnitzer & Kasen,* attorneys).

The opinion of the court was delivered

PER CURIAM. The Superior Court, Law Division, sustained the granting of a variance from the zoning ordinance of the Borough of Sea Girt, Monmouth County to permit the construction of a hotel in a residential zone. The variance was recommended by the local Board of Adjustment and approved by the governing body of the Borough pursuant to *N. J. S. A.* 40:55–39(d). The objecting property owners who had attacked the action of the local boards appealed from the Law Division judgment and the matter was certified on our own motion before argument in the Appellate Division.

Study of the record and briefs has led us to conclude the judgment should be affirmed substantially for the reasons

expressed by Judge Knight in the Law Division. His un-reported opinion follows:

"This is a consolidated action in lieu of prerogative writs challenging a variance recommended by the Board of Adjust-ment of Sea Girt and granted by the governing body. The matter has been in litigation since 1962 and is presently be-fore this court for the third time. On two previous occasions defendant Stockton Hotel, Inc. obtained a variance to con-struct a new hotel in an area zoned for single-family resi-dential use. A hotel presently exists on the property as a nonconforming use.

In each of the prior actions the variance granted was set aside because of procedural deficiencies.

Plaintiffs again raise several objections to the procedures followed at the municipal level, and urge that these alleged procedural deficiencies are of sufficient magnitude to warrant setting aside Stockton's variance for the third time. Even though several of the contentions relate to form rather than substance, the court will consider each argument separately.

■ Plaintiffs first allege that the Board of Adjustment lacked jurisdiction to act because neither the date fixed for the first hearing nor the notice given conformed to the re-quirements of *N. J. S. A.* 40:55–44. This section in part provides:

'The Board of Adjustment shall fix a reasonable time for the hear-ing of the appeal, giving due notice thereof to the appellant. Said appellant shall at least 10 days prior to the time appointed for said hearing give personal notice to all owners of property situate within or without the municipality, as shown by the most recent tax lists of the municipality or municipalities, whose property or properties as shown by said lists are located within 200 feet of the property to be affected by said appeal.'

It is argued by plaintiffs that the following sequence of events supports their contention. On October 18, 1963 Stock-ton filed with the Borough Clerk, who was also Secretary of the Board of Adjustment, an application under *N. J. S. A.* 40:55–39(d) for a use variance to allow the construction and

operation of a 'year 'round hotel.' At that time, and without consulting the members of the Board, the Secretary scheduled the first hearing for 9:00 A.M., November 4, 1963, at the Sea Girt Borough Hall. At a public meeting of the Mayor and Council on October 22, 1963 the resignations of the Chairman and three other members of the Board of Adjustment effective November 5, 1963 were announced. At said meeting the Chairman also announced that the hearing of Stockton's application, fixed for November 4th, would be adjourned to a subsequent date, although no specific date was mentioned. The Mayor and Council accepted the resignations effective November 5, but no appointees were named to fill the vacancies. Two newspapers of general circulation in Sea Girt carried front-page news items of the resignations. On October 29, 1963, the Board of Adjustment met and conducted a hearing on another matter. At this meeting the Chairman again announced his resignation and the resignation of three other members. The Board again met on November 4, 1963 at 9:00 A. M. The applicant, its attorney, the attorney for the objectors, and five or six other persons were present. The only action taken, over objection by counsel for the objectors, was to adjourn the hearing on the Stockton application to November 7, 1963. Notice of this adjournment appeared in the November 7 issue of the *Coast Star*, a weekly newspaper of general circulation in Sea Girt. A notice of the adjournment was also posted on the bulletin board in the Borough Hall.

Plaintiffs argue that the act of posting and publishing of notices in this fashion was insufficient to satisfy the requirements of *N. J. S. A.* 40:55–44; and further, that the facts as set forth above, taken in their entirety, likewise indicate a violation of the statute.

The two published notices of the meeting for November 7, 1963, do not operate as sufficient notice within the meaning of *N. J. S. A.* 40:55–44. However, defendant Stockton does not rely on these notices to support its claim of compliance with the statute. Rather, defendant maintains that every property owner within 200 feet of the property in question

was duly notified more than 10 days prior to the scheduled Board meeting of November 4—a meeting which in fact took place at the precise hour and date mentioned in the notice.

The provisions of *N. J. S. A.* 40:55–44 were designed for the benefit of those property owners situated within 200 feet of the affected property, and since the hearing fixed in the present case was in complete accord with the notices sent to these people, there is no justification for the assertion that the requirements of the statute have not been met.

██ Moreover, the argument that the Board of Adjustment did not 'fix a reasonable time for the hearing' as required by the statute is without merit. There is no allegation that any of the interested property owners were actually inconvenienced by this action, despite the fact that the Board of Adjustment meeting was scheduled for 9:00 a.m., an unprecedented occurrence in Sea Girt.

 The fact that the resignations of four Board members caused some confusion, and also that the Secretary of the Board (rather than the Board itself) fixed the date for the first hearing are harmless irregularities, particularly in the absence of an allegation that any interested property owner was prejudiced as a result thereof. It is true that the requirements of *N. J. S. A.* 40:55–44 are jurisdictional. *Oliva v. City of Garfield,* 1 *N. J.* 184 (1948); *Hendey v. Ackerman,* 103 *N. J. L.* 305 (*Sup. Ct.* 1926). In these cases, however, no notice of any type was given to landowners within 200 feet of the subject property. Such is not the case here, and under the circumstances, the Court is of the opinion that there was compliance with the requirements of *N. J. S. A.* 40:55–44.

██ Plaintiffs next assert that Stockton's present application for a variance is barred by the doctrine of *res judicata.* This argument is premised on the fact that Stockton appealed to the Board of Adjustment on February 2, 1963 for a substantially identical variance. On March 26, 1963 the Board recommended that the variance be granted, and on April 9, 1963 the Mayor and Council adopted the Board's recommenda-

tion. Thereafter, plaintiffs commenced an action in lieu of prerogative writs claiming, *inter alia*, that the Board's vote taken in executive session violated the 'Right to Know Law' (*N. J. S. A.* 10:4-1 *et seq.*). Plaintiffs prevailed upon this ground and their motion for summary judgment was granted. See *Kramer v. Bd. of Adjust., Sea Girl*, 80 *N. J. Super.* 454 (*Law Div.* 1963).

Plaintiffs now contend that since the vote taken by the Board on March 26, 1963 was void, the Board, in effect, did not render any decision within 90 days from the date of Stocton's application. In this event, *R. S.* 40:55-45 provides that the appeal 'shall be deemed to be decided adversely to the appellant in the same manner as though said Board had rendered a decision to that effect.'

Plaintiffs seek to equate this result with the 'statutory denial' cases such as *Miller v. Boonton Tp. Bd. of Adjustment*, 67 *N. J. Super.* 460, 470 (*App. Div.* 1961) ; *cf., Griggs v. Zoning Bd. of Adjustment, Princeton*, 75 *N. J. Super.* 438, 442 (*App. Div.* 1962). However, in these latter cases, even if it be assumed that *res judicata* would apply, the Board's action is tantamount to a denial of the application because the resolution fails to receive the requisite number of votes. Such is not the case here, and regardless of the legal characterization which plaintiffs endeavor to impart to the Board's prior decision, Stockton's application has yet to receive an adjudication adverse to the applicant *on the merits*. Accordingly, this contention must be rejected.

█ A more troublesome contention raised by plaintiffs is the allegation that one or more members of the Board of Adjustment and of the governing body were disqualified from passing upon the Stockton application because they had prejudged the matter. In addition to denying this allegation, defendant Stockton characterizes it as 'scandalous and shocking,' and objects to any probing of the mental processes of the Sea Girt public officials as contrary to the policy and specific prohibitions recently declared by our Supreme Court in *State v. LaFera*, 42 *N. J.* 97 (1964).

In *LaFera*, Chief Justice Weintraub, speaking for the court, condemned the attempt of a paid investigator to indirectly probe the verdict and deliberations of a jury by 'contacting relatives, friends, and associates under a multiple of guises, in the hope that something useful would emerge.' 42 *N. J.*, at *p.* 105. However, even assuming that the deliberations and verdict of a jury are sufficiently analogous to the deliberations, findings, and conclusions of administrative bodies, the *LaFera* case is nevertheless readily distinguishable from the case at bar. What was condemned in *LaFera* was the fact that defendants hired a private investigator based upon 'nothing more than a sense of shock induced by the verdict of guilty.' In this regard, the Court stated:

'It may appear odd to recognize a ground for the invalidation of a verdict while denying a litigant a chance to find out whether such an event perchance did occur. The fate of a defendant is thus made to depend upon sheer luck, that the wrongful event somehow comes to light. The weight of the criticism is appreciated, but when contending values clash in their demands, a balance must be struck, and the balance struck is not shown to be a poor one because in some unknowable cases there may be an injustice.' 42 *N. J.*, at *p.* 107

The Court did not define the *quantum* of independent evidence of bias or prejudice which would suffice. However, if such a preliminary showing is deemed to be necessary in order to justify a probing of the factfinder's mental processes, the Court is of the opinion that the minimum standard has been met in this case. It is undisputed that the Stockton application received great publicity almost from the outset, and the matter soon became a subject of deep moment to the community. As is almost inevitable in such cases, the seeds of political controversy were sown, with private citizens as well as public officials taking an active role in the debate.

Plaintiffs allege that the then Mayor of Sea Girt and at least one Councilman made various public statements, mostly in connection with the April 1963 primary in Sea Girt, which statements might be construed as expressions of opinion on the Stockton variance. These allegations are supported by

exhibits marked into evidence. In particular, one of the exhibits contains a newspaper advertisement paid for by the 'Citizens' Committee for Re-election of Mayor Doyle.' Listed as one of the Mayor's qualifications is the fact that: 'He has a realistic attitude toward the Stockton Hotel.' Among those whose names are listed in the advertisement as endorsing the Mayor's platform are the four members of the Board of Adjustment who participated in the Stockton application.

Plaintiffs have failed to produce evidence which clearly indicates that certain members of the Board of Adjustment and governing body prejudged the Stockton application. To the contrary, based solely on the exhibits and information adduced on pretrial discovery, the issue of prejudgment is at best a debatable one. In such a case, a balance of contending values must be struck. *State v. LaFera, supra.* This Court has not overlooked the right of public officials to be free from a probing investigation of this sort. But to be weighed against this factor is the right of the objectors to a hearing; and a hearing before an administrative tribunal acting *quasi*-judicially implies that the factfinder 'shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action.' *Penna. R. R. Co. v. N. J. State Aviation Com.,* 2 *N. J.* 64, 70 (1949). And see *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950) ; *Borgia v. Board of Review,* 21 *N. J. Super.* 462 (*App. Div.* 1952).

Unlike *LaFera,* this is not a case where plaintiffs have sought to probe the mental processes of the factfinders based upon nothing more than dissatisfaction with their decision. Thus, under the circumstances of this case, the Court is of the opinion that the strong policy against probing the motivations of a *quasi*-judicial body is outweighed by the right to a fair hearing consistent with fundamental standards of due process.

At the conclusion of plaintiffs' case, defendant Stockton moved to dismiss plaintiffs' allegations pertaining to the issue

of prejudgment on the ground that plaintiffs have failed to prove a *prima facie* case. For the purposes of this motion, the question is not whether plaintiffs have a right to raise the issue of prejudgment, but whether they have proved the allegations thus raised. This necessarily involves a discussion of the applicable principles of law as well as an analysis of the evidence produced at trial.

It would not serve any useful purpose to search for a precise definition of 'bias' or 'prejudice.' However, in this regard, the forceful words of Judge Frank warrant quoting at some length:

'Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, "bias" and "partiality" be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are prejudices. Without acquired "slants," preconceptions, life could not go on. Every habit constitutes a prejudgment; were those prejudgments which we call habits absent in any person, were he obliged to treat every event as an unprecedented crisis presenting a wholly new problem he would go mad. Interests, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference.' *In re J. P. Linahan,* 138 *F.* 2d 650–651–52 (2 *Cir.* 1943)

The above quoted language applies with equal, if not greater, force to administrative bodies whose task is not merely the weighing of disputed issues of fact, but also includes 'the assembling and interpretation of social and economic facts.' 2 *Davis, Administrative Law* (1958), § 12.01, *p.* 137. Moreover, even with respect to the judiciary, a mere declaration of opinion does not disqualify a judge in the absence of malice or ill will directed against one party or in favor of his opponent. *State v. Bolitho,* 103 *N. J. L.* 246 (*Sup. Ct.* 1926), affirmed *per curiam* 104 *N. J. L.* 446 (*E. & A.* 1927).

Plaintiffs rely upon the case of *N. J. State Bd. of Optometrists v. Nemitz*, 21 *N. J. Super.* 18 (*App. Div.* 1952), for the proposition that prejudice or prejudgment by a member of a *quasi*-judicial body renders its action nugatory. But that case was expressly limited to its facts by *Mackler v. Bd. of Educ. of Camden*, 16 *N. J.* 362, 368–369 (1954), wherein the Court reaffirmed the rule that: 'The fundamental reason that supports disqualification of a judge is personal interest in the case or the manifestation of malice or ill will toward the accused.' 16 *N. J.*, at *p.* 368 and cases cited therein.

Within the legal framework as set forth above, it is clear that the testimony produced at trial falls short of a *prima facie* showing of prejudice or prejudgment on the part of any public official who voted in favor of the Stockton application.

The statements given to the press by Mayor Doyle and Councilman Brisben are an insufficient indication of prejudice or prejudgment for at least two reasons. First, although it is not disputed that in granting a variance the governing body acts in a *quasi*-judicial capacity, *Kotlarich v. Ramsey,* 51 *N. J. Super.* 520, 541 (*App. Div.* 1958); *Piggott v. Borough of Hopewell,* 22 *N. J. Super.* 106, 110 (*Law Div.* 1952), nevertheless, the interest which disqualifies a member of the governing body in such a situation is a personal or private one, and not such an interest as he has in common with all other citizens or owners of property. *Piggott v. Borough of Hopewell, supra; McNamara v. Saddle River,* 60 *N. J. Super.* 367, 378 (*Law Div.* 1960), affirmed *per curiam* 64 *N. J. Super.* 426 (*App. Div.* 1960). True, from his so-called 'realistic attitude toward the Stockton Hotel,' a reasonable mind might be left with little doubt as to where the Mayor's sentiments lay; but it is equally true that the campaign literature, the statements to the press, and all other official statements represent no more than the views of public officials pertaining to a matter of deep moment to the community.

Furthermore, there is no indication that these views touched on the actual merits of the Stockton variance—particularly the third application which is the one presently

before the Court. And even if this were the case, it would not necessarily be the equivalent of *personal* bias or prejudice; nor would it be an indication of malice toward one or favoritism toward another. *Mackler v. Bd. of Educ. of Camden, supra.*

A similar contention of prejudgment was rejected in the leading case of *Henry v. Speer,* 201 *F.* 869 (5 *Cir.* 1913). There, plaintiff sought to disqualify a judge who had delivered to the newspapers an opinion pertaining to the matter in issue in which it was alleged that: 'practically every issue is prejudged and determined by the said judge.' In construing a federal statute corresponding generally to the present New Jersey Law (see *N. J. S.* 2A:15–49), the court held that the deponent's allegations did not tend to show the existence of *personal* bias or prejudice on the part of the judge, but rather 'a prejudgment of the merits of the controversy and "against deponent's right to recover." ' 201 *F.,* at *p.* 872; in accord, *Price v. Johnson* [9 *Cir.*], 125 *F.* 2d 806, and cases cited at *p.* 812.

Since it is clear that the public statements of Mayor Doyle and Councilman Brisben are not sufficient to indicate bias, prejudgment, or prejudice within the meaning of the above stated principles, it follows that the endorsement of the Mayor by four members of the Board of Adjustment in the Mayor's campaign for re-election is likewise insufficient to indicate prejudgment on the part of the Board.

Considering the testimony at trial and the exhibits admitted into evidence in a light most favorable to plaintiffs, it is the court's opinion that a *prima facie* case of bias, prejudice or prejudgment on the part of any members of the governing body or Board of Adjustment has not been shown. Accordingly, defendant's motion to dismiss this count is granted.

Plaintiffs' remaining objections relate to the manner in which the hearing was conducted before the Board of Adjustment. First, it is alleged that at least one member of the Board considered matters outside the record. Plaintiffs have reference to extended questioning of a particular witness by a

Board member wherein the latter indicated that he possessed knowledge which was at odds with the testimony of the witness.

It is well settled that the Board of Adjustment may not act upon facts which are not part of the record. *Russell v. Tenafly Bd. of Adjustment*, 31 *N. J.* 58 (1959); *Kempner v. Edison Tp.*, 54 *N. J. Super.* 408 (*App. Div.* 1959). The Board, however, is not obligated to function in a vacuum. *Reinauer Really Corp. v. Nucera*, 59 *N. J. Super.* 189, 201 (*App. Div.* 1960), certif. denied 32 *N. J.* 347 (1960). Thus, the rule requiring that personal knowledge of Board members be set forth in the record applies only where the knowledge thus gained is made the *basis* for the award of the variance. *Giordano v. City Commission of City of Newark*, 2 *N. J.* 585 (1949); *Stolz v. Ellenstein*, 7 *N. J.* 291 (1951). *Cf. Kochen v. Consolidated Pol., etc., Pension Fund Comm.*, 71 *N. J. Super.* 463, 472 (*App. Div.* 1962). The rule clearly has no applicability to the present case, where, if the Board member's personal knowledge played any part whatsoever in the final determination, it was so insignificant as not to require judicial interference on this ground alone.

Finally, plaintiffs argue that various remarks made by the Board as well as its rulings on objections and points of evidence indicate that the Board misunderstood its function and misconceived its duties. The contention might have merit if the Board is to be held to standards generally applicable to a court of law. However, 'it must be kept in mind that the administrative bodies are composed of laymen. The prescribed procedural pattern is a general and flexible one, adaptable to the particular case.' *Tullo v. Millburn Tp.*, 54 *N. J. Super.* 483, 496 (*App. Div.* 1959), citing *Tomko v. Vissers*, 21 *N. J.* 226, 238–239 (1956). Moreover, plaintiffs were represented by competent counsel at every stage of the proceedings, and the record discloses that the Board's rulings, even assuming that they were erroneous, did not prevent the objectors from setting forth either their legal or factual con-

tentions. Since there is no indication that plaintiffs did not receive substantial justice, this court will not set aside the Board's decision for alleged errors in the manner that the proceedings were conducted. See *Nordco, Inc. v. State*, 43 *N. J. Super.* 277 (*App. Div.* 1957); *J. Abbott & Sons, Inc. v. Holderman*, 46 *N. J. Super.* 46 (*App. Div.* 1957).

 Before proceeding to the long-delayed consideration of the merits of this controversy, some well settled principles relating to this court's scope of review are worthy of repetition. The question on appellate review of the municipal action here involved is whether the authorities could reasonably conclude from the evidence presented that 'a special reason' existed for the granting of the variance sought and whether it could be done without any substantial detriment to the public good or substantial impairment of the zoning plan and ordinance. If such support for the application reasonably appears, approval of the variance will not be declared arbitrary or capricious. *Burton v.* [*Town of*] *Montclair*, 40 *N. J.* 1 (1963); *Andrews v. Ocean Twp. Board of Adjustment*, 30 *N. J.* 245 (1959); *Yahnel v. Bd. of Adjust. of Jamesburg*, 79 *N. J. Super.* 509 (*App. Div.* 1963). Moreover, where a variance is granted by municipal officials pursuant to statutory authority, it is entitled to the customary judicial presumption of validity, *Yahnel v. Bd. of Adjust. of Jamesburg*, *supra;* and, as was stated in *Cummins v. Bd. of Adjustment of Bor. of Leonia*, 39 *N. J. Super.* 452, 460 (*App. Div.* 1956):

'The question is never what we would have done in the circumstances, but whether the zoning board abused its authority or departed from law.'

Plaintiffs launch their attack upon the merits of the Stockton application by asserting that the nine special reasons assigned by the Board and approved by the governing body do not legally conform to the 'special reasons' set forth by the Legislature in *N. J. S. A.* 40:55–39(d). It is significant to note, however, that the vast majority of cases relied upon by plaintiffs antedate the more recent pronouncements by our

Supreme Court commencing with *Andrews v. Ocean Twp. Board of Adjustment*, 30 *N. J.* 245 (1959). This fact is of the utmost importance since the special reasons variance under Section 39(d) has had somewhat of a 'checkerboard' history. The cases decided subsequent to the landmark decisions in *Ward v. Scott*, 11 *N. J.* 117 (1952), and 16 *N. J.* 16 (1954), are carefully detailed in *Black v. [Town of] Montclair*, 34 *N. J.* 105 (1961), and need not be reviewed at this time. However, it is important to note that the case of *Moriarty v. Pozner*, 21 *N. J.* 199 (1956), upon which plaintiffs place great reliance, was limited to its facts in *Andrews* and then 'nullified' in *Black*.

Both the *Black* and *Andrews* cases hold that if a use variance satisfies the negative criteria of section 39, it may be affirmatively based solely on the special reason of 'promotion of the general welfare,' even in the absence of any showing that the property is uniquely circumstanced. In accord, *Burton v. [Town of] Montclair*, 40 *N. J.* 1 (1963).

It is perhaps more than coincidental that *Andrews, Black,* and *Burton* all involved variances for parochial or private schools where the benefit to the general welfare was clearly demonstrated. Similarly, in *Yahnel v. Bd. of Adjust. of Jamesburg, supra,* the variance granted permitted the construction by the New Jersey Bell Telephone Company of a wire center in a residential zone—again, a situation where the 'general welfare' test had clear application. Whether in a particular case a variance for a non-school use may be based solely on promotion of the general welfare remains an open question. The court in *Yahnel,* however, impliedly recognized this situation by stating that if a greater affirmative showing is required, then either the *inutility* of the property for the *permitted* uses or the particular *suitability* of the property for the *proposed* use would suffice. Finally, the court stated that the implication in *Moriarty v. Pozner, supra,* that a 'burden peculiar to the property is the only permissible basis for a (d) variance, is no longer the law in this State, if it ever was,' 79 *N. J. Super.,* at *p.* 518.

In their challenge to the action of the Board of Adjustment in the present case, plaintiffs focus in succession on each of the nine special reasons, as if each were a single entity. In this manner, plaintiffs conclude (with supporting authority) that a variance based solely on the particular special reason in question is legally insufficient; and since it is impossible for this court to determine the impact that the insufficient reason had on the Board's ultimate decision, the entire variance should be set aside.

If the Court were to adopt this approach, a likely result would be that Boards of Adjustment would be reluctant to set forth any more than the barest minimum in the way of findings of fact and special reasons based thereon. Yet, our courts have repeatedly urged the Board—whether in granting or denying an application — to make detailed and complete findings upon which its ruling may be based. See *Wolf v. Zoning Bd. of Adjust. of Park Ridge,* 79 *N. J. Super.* 546, 553 (*App. Div.* 1963); *Peoples Trust Co. v. Hasbrouck Heights,* 60 *N. J. Super.* 569 (*App. Div.* 1959), and cases cited at *p.* 575. Moreover, in reviewing the record made before the Board, the question is whether the special reasons, *taken as a whole,* are founded affirmatively in one or more of the zoning objectives set forth in *R. S.* 40:55–32. *Bern v. [Borough of] Fair Lawn,* 65 *N. J. Super.* 435, 446 (*App. Div.* 1961). And in *Ward v. Scott, supra,* 16 *N. J.,* at *p.* 21, the Court stated:

'In passing on this issue, we must look at the entire picture and consider the reasons in their aggregate; it is in nowise controlling that one or more of the reasons standing alone would not be legally sufficient.'

Of the nine special reasons set forth by the Board in the present case, the first three relate to what the Board termed as 'undue hardship.' More specifically, these reasons also include a recognition of the uniqueness of the Stockton site, its unsuitability for the permitted single-family use, and its peculiar suitability for the proposed use. The reasons find

their support in findings 9, 10, 11 and 33, which in turn are amply supported by the evidence before the Board.

Plaintiffs raise several objections to these findings and reasons, dwelling largely on the fact that experts called on behalf of the objectors offered diametrically opposed testimony. However, it is well settled that the Board 'has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal.' *Reinauer Realty Corp. v. Nucera, supra,* 59 *N. J. Super.,* at *p.* 201.

Two further objections deserve particular mention. Plaintiffs argue that, contrary to the Board's finding, Stockton is not the only beach-front property which is not restricted to Sea Girt residents. The Board's finding was based on the testimony of the Borough Clerk who testified that the present municipal regulations restrict beach privileges solely to pass-holders among Sea Girt residents. Plaintiffs' point is that the beach regulations are of no effect since they were not enacted by ordinance (see *R. S.* 40:61–1(f) and *N. J. S. A.* 40:92–7.1), and in any event, Sea Girt may not lawfully exclude nonresidents from its beaches as a matter of law. *Cf. Brindley v. Borough of Lavallette,* 33 *N. J. Super.* 344 (*Law Div.* 1954). There is no need to express an opinion on the legal merit of these contentions, since the validity of Sea Girt's beach regulations is not before this court. The fact remains that these regulations remain in full force and effect until and unless they are repealed, rescinded, or judicially declared to be invalid.

Plaintiffs also contend that, contrary to the applicant's testimony before the Board, the Stockton property does not in fact include riparian rights to the mean low water line, and a motion to remand these proceedings to the Board for determination of this issue was heard by the court this morning and proof was presented in the form of an affidavit signed by Mr. Frank L. Hugus, Junior, who is the assistant title officer of the Lawyers' Title Insurance Corporation, a body corporate of the State of Virginia, in which he states that from his

examination of the indices and a search which he has made, the title to the Stockton Hotel does not extend to the low water mark of the Atlantic Ocean bounding the same on the east thereof and does not include riparian rights, and the defendant Stockton, even though it was not marked in evidence, offered the court a title policy issued by the Home Insurance Company, as I recall the name, in which the title to defendant's property is guaranteed to the mean low water mark. Be that as it may, in this motion the defendants argue that since the issue of riparian rights was uncontradicted before the Board, a remand would violate the principle of exclusivity of the record.

It is of course true that the record made before the Board is the record upon which the correctness of the Board's action must be determined, and the receipt of testimony before the Superior Court is no substitute for this requirement. *Kempner v. Edison Tp.*, 54 *N. J. Super.* 408, 416–417 (*App. Div.* 1959). A remand, however, would not be violative of this principle; thus, inquiry must be directed to whether a remand is either necessary or proper in the present case. Defendant argues by analogy to a lower court proceeding, that there was ample opportunity for plaintiffs to be heard on this point before the Board. But the analogy is not persuasive, since proceedings before the Board of Adjustment do not have the same adversary characteristics as proceedings in a court of law. See *Peoples Trust Co. v. Hasbrouck Heights, supra,* 60 *N. J. Super.,* at p. 575. Nevertheless, since the objectors who appeared through counsel at the Board's hearings correspond exactly to the plaintiffs in the present action, justice and fairness would seem to dictate that the matter should have been raised below. See *Black v. [Town of] Montclair, supra,* 34 *N. J.,* at p. 117.

In any event, whether or not the Stockton property includes riparian rights, it does not appear that the Board was misled on this issue. Irrespective of the legal connotations that may be associated with the term 'riparian rights,' it is clear from the record below that counsel for the applicant

did not contemplate any meaning other than 'direct access to the waterfront.' Moreover, it is equally clear from the Board's findings that its members had the same understanding of the term; thus, finding No. 10 states: 'The site includes riparian rights so that the hotel guests have direct access to the water without crossing a public road or boardwalk.' Furthermore, there is no reason to assume that the real estate expert, who also used the term (being supplied with information from the applicant's attorney), ascribed to it any other meaning.

It is true that the existence or nonexistence of riparian rights in its legal sense affected the amount of Stockton's property which could reasonably be devoted to residential use. But in either case, it would mean that somewhere between one-half and two-thirds of the property was unsuitable for residential development—according to the testimony which the Board obviously chose to accept. Under these circumstances a relitigation of the question of riparian rights is not warranted; accordingly, plaintiffs' motion to remand these proceedings to the Board of Adjustment is denied.

The fifth special reason submitted by the Board, and portions of the third and fourth reasons relate to the promotion of the general welfare. Since the decision in *Andrews v. Ocean Twp. Board of Adjustment, supra,* there no longer is any doubt that, in a proper case, a use variance may be based on the sole affirmative reason of promotion of the general welfare. Plaintiffs do not seriously dispute this principle; rather they contend that the Board arbitrarily recommended a variance which was legislative in character, and in any event, the Board applied an incorrect standard.

It is fundamental that the Board of Adjustment lacks the power to rezone; thus, if a zoning ordinance is outmoded or ill-fitting, its alteration must be by amendment or revision—not by variance. *Schoelpple v. Woodbridge Twp.,* 60 *N. J. Super.* 146, 152 (*App. Div.* 1960); *Bern v. [Borough of] Fair Lawn, supra,* 65 *N. J. Super.,* at *p.* 452. The court in *Bern,* however, noted that the promotion of the most appropriate use of every particular parcel of land through the

sole use of the municipality's legislative power was 'a veritable impossibility.' Thus, through the variance procedure, the Board is able to take into consideration the character of the specific property and the reasonableness of restricting it to the permitted uses. 65 *N. J. Super.*, at *pp.* 448–449. This is precisely what the Board has done in the present case, and there is no indication in the record that the Board has attempted by variance to compensate for deficiencies in the ordinance. *Cf. Schoelpple v. Woodbridge Twp., supra.*

Plaintiffs also argue that the Board, in considering the benefits to be derived from a modern hotel on the Stockton site, improperly based their determination on a comparison with the present hotel. Also implicit in this argument is the fact that the Board in considering only the relative benefits and detriments of the proposed structure *vis a vis* the present structure, arbitrarily ignored a third alternative; that is, no hotel at all, and a complete reversion of the Stockton property to single-family residential use.

In effect, plaintiffs' position is quite similar to the contention urged by the concurring opinion in *Grundlehner v. Dangler,* 29 *N. J.* 256 (1959), to wit:

'(B)efore a variance to substantially extend or enlarge a pre-existing nonconforming use may be granted under *N. J. S. A.* 40:55–39 the appropriate municipal officials should first determine whether a variance to *create* the use in the first instance would have been granted.' 29 *N. J.*, at *pp.* 274–275

This view, however, was not adopted by the majority opinion in *Grundlehner;* nor has it since been adopted in subsequent decisions.

Furthermore, finding No. 33, as well as special reason No. 2, makes it perfectly clear that the Board in fact considered (and rejected) the third alternative which plaintiffs urge. This finding is substantially grounded in competent evidence and cannot be said to have been arbitrarily made.

The remaining special reasons submitted by the Board also are amply supported by competent evidence in the record. Several of these reasons (particularly Nos. 6 and 8, and a

portion of No. 5) are more closely related to the negative criteria required by section 39 of the zoning act and thus do not constitute affirmative special reasons. Two others (Nos. 7 and 9), while obviously keyed to the statutory purposes of zoning set forth in *R. S.* 40 :55–32, nevertheless do not appear to be sufficient, standing alone, to support the variance. However, these reasons in no way detract from the Board's ultimate conclusion; and, viewing the entire picture in its aggregate, the special reasons found by the Board to affirmatively support the Stockton variance fall well within the standard of legal sufficiency as set forth by the Court in the *Andrews, Black* and *Burton* decisions, *supra*. The decisions in *Mocco v. Job,* 56 *N. J. Super.* 468 (*App. Div.* 1959); *Whitehead v. Kearny Zoning Board of Adjustment,* 51 *N. J. Super.* 560 (*App. Div.* 1958); and *Skaf v. Zoning Board of Adjustment of Asbury Park,* 35 *N. J. Super.* 215 (*App. Div.* 1955), are not to the contrary. Each of these cases turned upon an absence of proof of either suitability of the property for the proposed use, or its inutility for any of the permitted uses. *Cf. Yahnel v. Bd. of Adjust. of Jamesburg, supra;* and see Cunningham, 'Control of Land Use in New Jersey,' 14 *Rutgers L. Rev.* 37, 93 (1959).

Apart from the affirmative findings and reasons necessary to support a use variance, the Board must also find, based on competent proofs, that the appropriate negative criteria have been met; *i.e.*, that the relief can be granted 'without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.' *Andrews v. Ocean Twp. Board of Adjustment, supra.*

In the present case, the Board found that the new hotel would have fewer guest rooms than the present structure, would be shorter in height and smaller in bulk; would provide more on-site parking which would be adequate for all hotel patronage; would be fully air-conditioned affording better sound control than the existing structure, and would be fireproof whereas the present structure is not. Plaintiffs

do not contend that these findings are unsupported by the evidence. Rather, they renew an argument previously made; that is, by comparing the existing structure with the proposed structure, the Board adopted an impermissible standard. This procedure, however, was sanctioned in *Grundlehner v. Dangler, supra*; not only for the purpose of affirmatively proving promotion of the general welfare, but also for proving that the negative criteria have been met. 29 *N. J.*, at *pp.* 269–270.

It is true that there was testimony on behalf of the objectors that the new hotel and its accessory facilities would result in a greater intensification of a commercial use on the Stockton property. Indeed, the Board's findings indicate that it was fully aware that the new hotel would be accompanied by *some* detriment to the area. However, as the court stated in *Yahnel v. Bd. of Adjust. of Jamesburg, supra*:

'The key word here is "substantially." It comes from the statute itself. Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations * * * represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms. If on adequate proofs the board without arbitrariness concludes that the harms, if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands.' 79 *N. J. Super.*, at *p.* 519

Thus, in the present case, the Board concluded that the 'blight of a deteriorating old hotel is a more serious hazard to Sea Girt as a residential community than a new modern hotel.' This conclusion is supported by the evidence and, together with the special reasons submitted by the Board, fully justifies the recommendation for the variance here in question.

Thus, based upon the record taken in its entirety, this court finds no showing that the action of the local officials of Sea Girt in granting the variance to Stockton was actually arbitrary or capricious.

As a final matter, plaintiffs contend that the Board recommended the grant of a variance which, in effect, 'exempted' Stockton from several provisions of the zoning ordinance with-

out proof of findings respecting such provisions. Specifically, plaintiffs allege that there was no proof to justify the grant of a variance from: (a) the height limitation, (b) the limitation of accessory uses, (c) the front yard requirement, and (d) the prohibition of multi-family permanent dwellings.

Under the zoning ordinance of Sea Girt the property in question lies wholly within district 1, in which single-family residences are the sole permitted use. In this district, the height requirements for buildings are not less than 22 feet nor more than 40 feet; the front yard requirement (which is defined as 'unoccupied space') is a minimum of 40 feet; and the permitted accessory uses for hotels are limited to a tea room or grill, a barber shop, and a tailor shop.

■■■ Essentially, the question posed is the extent to which the above requirements apply to a wholly new use placed in an area restricted against such use. Research has disclosed no case which directly touches upon the issues here involved. *Smith v. Paquin*, 77 *N. J. Super.* 138 (*App. Div.* 1962), cited by plaintiffs, is inapposite, since a use variance was not involved. Rather, each of the requirements to which the court referred concerned bulk or physical regulations pursuant to *N. J. S. A.* 40:55–39(c). In *Levitin v. Bd. of Adjustment, Bloomfield*, 66 *N. J. Super.* 208 (*Law Div.* 1961), and *Potts v. Board of Adjustment of Princeton*, 133 *N. J. L.* 230 (*Sup. Ct.* 1945), the court in each case held that in *denying* an application for a use variance, it was not improper for the Board to consider that the plans and specifications indicated noncompliance with other sections of the zoning ordinance. Neither case, however, dealt with a situation where, as here, the Board *recommends* a variance for the proposed use. The distinction is a crucial one, since in passing favorably upon an application for a use variance, both the Board and governing body necessarily determine that the proposed use, as shown in the plans and specifications, will not substantially impair the general purpose and intent of the zoning ordinance.

■■■ It is true that 'the function of variances, as contemplated by law, is to vary and not to disregard zoning ordi-

nances and restrictions.' 8 *McQuillin, Municipal Corporations* (3 *rev. ed.* 1957), § 25.171, *pp.* 406–407. However, it is equally true that 'variances must be granted or denied with due regard for the main purpose of a zoning ordinance and in substance to carry out that purpose.' *Id.,* at *pp.* 407–408, citing *Bern v. [Borough of] Fair Lawn, supra.*

In the present case, it is obvious that the height and front yard restrictions are intended to apply to single-family residences—the sole permitted use in district 1. Similarly, the limitation placed upon accesssory uses for hotels in district 1 necessarily applies only to nonconforming hotels in said district.

Moreover, the findings, reasons, and conclusions of the Board clearly indicate that every significant feature of the hotel variance was considered and decided. The fact that the Board did not make explicit findings in this regard is of small consequence since, under the circumstances, such findings are 'inherent in and may be properly deduced from the findings actually expressed.' *Tullo v. Millburn Tp.,* 54 *N. J. Super.* 483, 499 (*App. Div.* 1959). And, as stated by the Court in *Black v. [Town of] Montclair, supra,* an inadvertent omission may fairly be supplied 'by implication from the acknowledged circumstances and the action taken including the detailed protective conditions to the grant of the variance.' 34 *N. J.,* at *p.* 115.

In view of the entire record, this court finds no basis for interference with the discretion properly exercised by the Board and governing body. Accordingly, the variance recommended by the Board and granted by the governing body is sustained."

█ It is apparent from the voluminous testimony submitted that the issue presented for decision by the local Board of Adjustment and governing body was a difficult one. Whether this old nonconforming hotel ideally situated as it is for seashore resort purposes, should be continued and allowed to deteriorate further and to blight the neighborhood in ensuing years, or whether it should be razed and a variance

granted to permit its replacement by an attractive modern, fireproof hotel, has been bruited about the Borough for a number of years. This is the third time in the past three years that the appropriate municipal agencies have acted favorably on the application for the variance. The judicial decisions on the two previous occasions reversing the Borough's action represented only disapproval of certain procedures followed, and did not reflect upon the basic merit or wisdom of the variance grant.

In these highly controversial and oftentimes debatable zoning cases the courts must recognize that local officials "who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people are undoubtedly the best equipped to pass initially on such applications for variance." *Ward v. Scott*, 16 *N. J.* 16, 23 (1954). Therefore, the law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons. Discretionary authority to recommend to the governing body that a variance be granted for "special reasons" in cases like the present one has been vested in the Board of Adjustment by the Legislature, *N. J. S. A.* 40:55–39(d) ; discretionary authority to accept or reject the recommendation has been placed in the hands of the governing body by the same statute.

Such public bodies, because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion. Courts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work. So long as the power exists to do the act complained of and there is substantial evidence to support it, the judicial branch of the government cannot interfere. A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the ab-

sence of clear abuse of discretion by the public agencies involved. *Ward v. Scott, supra; Reinauer Realty Corp. v. Paramus,* 34 *N. J.* 406, 416 (1961); *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952); *Lemir Realty Corp. v. Larkin,* 11 *N. Y. 2d* 20, 181 *N. E. 2d* 407, 226 *N. Y. S. 2d* 374, 181 *N. E. 2d* 407 (1962); *Hannigan v. Murdock,* 47 *N. Y. S. 2d* 855 *(Sup. Ct.* 1944).

Our examination of the evidence adduced at the various hearings reveals substantial facts adequate to support the detailed findings of the Board of Adjustment and the acceptance by the governing body of the recommendation of a variance based thereon to permit the erection of the new Stockton Hotel. We find no substantial basis for a judicial conclusion that the personnel of the Board of Adjustment or the governing body failed to apply a conscientious judgment to the facts presented in deciding whether the variance should be recommended and granted. Nor do we discern in Judge Knight's treatment of the matter any ground for the disturbance of his decision and judgment.

Accordingly the judgment is affirmed.

HALL, J., concurs in result.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.