112 N.J. Super. 79 (1970)
270 A.2d 413
JENPET REALTY CO., INC., A CORPORATION OF NEW JERSEY, AND PETER J. PETRIZZO, PLAINTIFFS-APPELLANTS,
v.
J.B. ARDLIN, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1970.
Decided October 28, 1970.
*80 Before Judges KILKENNY, HALPERN and LANE.
Mr. Martin Klughaupt, attorney for appellants.
Mr. Vincent P. Rigolosi, attorney for respondent.
PER CURIAM.
Plaintiffs appeal from a judgment of the Law Division in favor of defendant, upholding a variance *81 recommended by the Zoning Board of Adjustment and approved by the Mayor and Council of the City of Garfield.
The variance would allow defendant property owner to erect a garden-type apartment building with 38 apartments and two offices in a heavy industrial zone, designated as "I" zone under the zoning ordinance.
The heavy industrial zone in this area is about 2000 feet in length running north and south, and about 400 feet in width running in an east-west direction, bounded on the west by the railroad and on the east by Midland Avenue.
The land in issue consists of two lots, slightly less than one acre in area, somewhat irregular in shape and of uneven gradation, located at the intersection of Midland and Van Winkle Avenues, almost in the center of the heavy industrial zone.
On the easterly side of Midland Avenue, immediately across from the subject property, is the beginning of a medium density residential area, the only permitted use from that point southward. Van Winkle Avenue is zoned primarily for low and medium residential use, with only the area in which the subject property is located zoned for industrial use. On the western border of the property are the tracks of Erie Railroad Company, across which is an area zoned for light manufacturing.
Approximately 25% of the property in the industrial district is being used for residences. There is a public school within 200 feet of the property in issue.
Plaintiff, an adjoining property owner whose land is used for warehousing and as a trucking terminal, objected to defendant's application for the variance. However, the variance was recommended and thereafter granted. The Law Division sustained the variance, as noted above.
In recommending the variance, the zoning board of adjustment found, among other things, that (1) because of the property's unique location and the status of the surrounding neighborhood, the proposed use was "particularly *82 suitable" and "will not be detrimental to the public good," (2) "the proposed use will be in harmony with the intent and purpose of the Zoning Ordinance of the City of Garfield."
Plaintiffs maintain that a zoning ordinance may prohibit a residential use in an industrial district. This is true. Cf. Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957), wherein the court said (at 169) "* * * homes are no more appropriate in an industrial district than industry in a residential one. In both situations the baleful influences upon residences are the same. Moreover, industry may prefer to avoid the frictions which ensue when discordant uses are side by side." The municipal welfare may be "better served by avoiding motley activities within its districts." Ibid. See, too, Gruber v. Raritan Tp., 73 N.J. Super. 120, 129 (App. Div. 1962). "The question is one of reasonableness under the circumstances." Ibid.
The allowance of a variance to permit in a particuuar zone a use not sanctioned in that zone may not be bottomed on the fact simply that it is (1) a "higher use," e.g., a fine residence, rather than a factory, or (2) more profitable or more advantageous to the property owner, e.g., a gasoline station rather than a one-family home. Moreover, a more liberal municipal ordinance may not deviate from or lessen the requirements of the statute as to the grant of a variance. The ordinance provision herein dispensing with the need of a showing of "special reasons" is not valid. Our Zoning Act specifies the grounds upon which a variance may be allowed. N.J.S.A. 40:55-39. Thus, the statute refers to cases where enforcement would cause "undue hardship" to the property owner. No such claim is made here. In fact, this plot can be sold for and converted to an industrial use. The statute also permits the grant of a variance for "special reasons." That is the ground asserted for the requested variance herein.
Does the construction of a garden-type apartment complex to house 38 family units, on less than an acre of land *83 in the center of a heavy industrial zone, constitute a "special reason" for the grant of a "variance," within the statutory meaning of "special reasons"? Does the fact that the subject plot of ground is within and near the center of the industrial zone alter the situation? Does the proximity of the particular plot to a residential zone or a school, or the existence of some limited other nonconforming residential uses in this industrial zone, legally justify issuance of a variance to add still another unpermitted use? These are the questions before us.
We answer them all in the negative, in inverse order. The policy of the law is to limit and diminish nonconforming uses, rather than increase or enlarge them. If further residential use in this industrial zone goes on unchecked, its character as an industrial zone will be lost. The perimeter of one zone is always in proximity to its adjacent zones. But proximity does not per se warrant intrusion into a zone of an unpermited use therein simply because such a use is allowed in a neighboring zone. If such blending of uses were sanctioned, zone boundaries would become meaningless. If the contrast between adjoining zones is too severe, then the establishment of "buffer zones" to soften the contrast is an accustomed practice.
Our courts have interpreted "special reasons" in the application of that terminology to specific cases. In the most recent instance, De Simone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970), it was held that public or semi-public housing accommodations to provide safe, sanitary and decent housing, to relieve and replace substandard living conditions, or to furnish housing for minority or underprivileged segments of population outside of a ghetto area, is a "special reason" within the statute authorizing grant of a use variance upon an affirmative finding of special reasons. De Simone involved a lease of a ten-acre tract of city-owned land to a nonprofit housing corporation *84 for the purpose of development of a low cost housing project. The district was zoned for one-family dwellings.
In De Simone Justice Hall pointed out that "special reasons" is a flexible concept and includes the promotion of "health, morals or the general welfare." 56 N.J. at 440. Variances "have been approved for many public and semi-public uses because they significantly further the general welfare." Ibid. They include a parochial school in a residential zone, Andrews v. Board of Adjustment, Ocean Tp., 30 N.J. 245 (1959) and Black v. Montclair, 34 N.J. 105 (1961); a private school in a residental zone, Burton v. Montclair, 40 N.J. 1 (1963); a dial telephone service equipment building in a residential zone, Yahnel v. Board of Adjustment, Jamesburg, 79 N.J. Super. 509 (App. Div. 1963), certif. den. 41 N.J. 116 (1963); a private hospital for emotionally disturbed in a residential zone, Kunzler v. Hoffman, 48 N.J. 277 (1966).
On the other hand, the grant of a variance to permit extension of a dairy into a residential zone was deemed arbitrary and unreasonable. Kohl v. Mayor, etc., Fair Lawn, 50 N.J. 268 (1967). In Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268 (1965), a zoning use variance to permit construction of a seaside hotel in a residential zone was upheld, so that an old nonconforming seaside resort hotel could be replaced by an attractive, modern fireproof hotel.
As noted in Kramer:
The question on appellate review of the municipal action here involved is whether the authorities could reasonably conclude from the evidence presented that "a special reason" existed for the granting of the variance sought and whether it could be done without any substantial detriment to the public good or substantial impairment of the zoning plan and ordinance. If such support for the application reasonably appears, approval of the variance will not be declared arbitrary or capricious. [45 N.J. at 285]
Put simply, "if a variance satisfies the negative criteria of section 39, it may be affirmatively based solely on the special *85 reason of `promotion of the general welfare,' even in the absence of any showing that the property is uniquely circumstanced." Ibid.
We have not been referred to any case wherein the erection of an apartment house complex to contain 38 residential units has been deemed a "special reason" to allow it, by way of a variance, in a heavy industrial zone. Perhaps, in its broadest connotation, the "general welfare" is furthered by new housing accommodations, especially in these days of a housing shortage in our State. But the emphasis in our case law has generally been upon the satisfying of some "public or semi-public" purpose, as constituting a furtherance of the "general welfare," such as the use of residentially-zoned property for a school, a hospital, a telephone equipment center, or public housing. Here, an apartment complex with only 38 residential units on less than an acre of land is not in the same category.
In Schoelpple v. Woodbridge Tp., 60 N.J. Super. 146 (App. Div. 1960), the Law Division had upheld the grant of a variance permitting construction of a supermarket in a residential zone. We reversed, holding that grant of the variance was improper because it would substantially impair the intent and purpose of the zone plan. We said (at 152), "If the ordinance is so outmoded and ill-fitting, its alteration must be by amendment or revision. It may not be done by variance." So, too, we noted (at 155) that extension by variance of land use zones in a municipality is not to be measured by the dollar, and a variance is not justified merely because real estate values will not be depreciated. Nor is it sufficient "that the proposed use would be more profitable to the owners than the permitted uses."
We find no "special reasons" herein for the invasion of this heavy industrial zone with a 38-unit apartment complex to be privately owned and operated presumably by the owners for profit.
*86 The judgment of the Law Division is reversed and the case is remanded with directions that judgment be entered in favor of the plaintiffs setting aside the variance.