**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3067-18T2

GEORGE PETERS and MARINA
PETERS,

     Plaintiffs-Appellants,

v.

ZONING BOARD OF ADJUSTMENT,
BOROUGH OF FORT LEE, NJ, and
V&R DEVELOPERS, INC.,

     Defendants-Respondents.

_____

Submitted May 4, 2020 – Decided May 28, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5221-17.

George Peters and Marina Peters, appellants pro se.

Marcanton D. Macri, attorney for respondent V&R Developers, Inc.

Marinello & Marinello, PC, attorneys for respondent Zoning Board of Adjustment Borough of Fort Lee, NJ, join in on the brief of respondent V&R Developers, Inc.

PER CURIAM

Plaintiffs George and Marina Peters, brother and sister, own a home in Fort Lee next door to a property owned by defendant V&R Developers, Inc. ("V&R"). Appearing pro se, they appeal the trial court's ruling that upheld a decision by the Borough of Fort Lee Zoning Board of Adjustment ("the Board") approving V&R's application to replace a preexisting building on the property. We affirm.

I.

We presume the parties' familiarity with the record and this matter's procedural history, and do not need to detail it at length here. The following abbreviated recitation will suffice.

V&R's plan is to construct a larger, two-unit residential dwelling that does not conform with the "R-2" zone's one-family use restriction. V&R accordingly requested a use variance under N.J.S.A. 40:55D-70(d)(1). V&R also sought a floor area ratio ("FAR") variance under N.J.S.A. 40:55D-70(d)(4), and a building height variance under N.J.S.A. 40:55D-70(d)(6). In addition, V&R sought assorted "subsection (c)" variances under N.J.S.A. 40:55D-70(c) for "lot area, lot coverage, front yard, rear yard, and side yard setbacks, and height from the first floor to grade plane."

A-3067-18T2

At a hearing on June 13, 2017, V&R presented to the Board testimony from three experts to support the requested variances. The Board considered this expert testimony, written reports by both its own and V&R's experts, maps and photographs of the neighborhood, reports from municipal departments, and the testimony of neighbors. Plaintiffs introduced no expert testimony of their own.

The Board unanimously approved the application, memorialized in a detailed resolution on June 27, 2017. Among other things, the Board concluded the project would support the goals of the local zoning ordinance and not increase the density of the area, increase traffic, or otherwise negatively impact the surrounding neighborhood.

More specifically, the Board's resolution noted the property contained a preexisting non-conforming two-family residence[1] in a one-family zone which also had a "deficient front yard setback." The property is "a slight

---

[1] The Board's resolution states in two places that the present use of the premises is as a one-family residence. However, these passages appear be clerical or typographical errors since the Borough tax and fire department records and the testimony of a neighbor show that the premises was being used as a two-family dwelling. Indeed, the first paragraph of the resolution recites that this is a "preexisting non-conforming two-family home." As we note, infra, we reject plaintiffs' argument that alleged flaws in the resolution require the approval to be set aside.

parallelogram, in that the front and rear lot lines are parallel but not at right angles to the side lot lines." The entire property is built on a sloping hill.

The Board recognized the surrounding neighborhood "within 200 feet of the property . . . contain[s] a mix of one and two-family dwellings." It noted there was a "high-rise residential development one block east" and several three-family dwellings nearby.

The Board accepted the expert testimony of V&R's planner that there were "special reasons" to grant the use variance. In this regard, the Board noted "the uniqueness of the topography and location of this lot" in relation to the surrounding neighborhood. The Board also credited the testimony of V&R's architect concerning the property's topography and "difficult" corner location.

The Board found the purposes of the Master Plan and Zoning Ordinance were met, because the development would replace "older dilapidated housing stock" while still maintaining the residential character of the neighborhood.

Having considered these factors, the Board concluded that the use variances could "be granted without any negative effect upon the public good and without substantial impairment to the intent and purpose of the Zoning plan."

A-3067-18T2

Additionally, the Board approved the subsection (d)(4) and (d)(6) variances for FAR and height, finding they would not produce a negative effect on surrounding residences. The Board also granted the subsection (c) variances.

Dissatisfied with the Board's decision, plaintiffs filed the present action in the Law Division seeking relief in lieu of prerogative writs. Plaintiffs argued to the trial court the Board's decision is flawed and not supported by adequate reasons and evidence from the hearing.

Following oral argument, the trial court issued a thirty-one-page written opinion upholding the Board's decision. As part of its analysis, the court found that V&R had presented adequate "special reasons" to the Board to justify a use variance under subsection (d)(1). In particular, the Board "appropriately found that the Property's unique sloping condition and the slightly undersized existing corner lot size with preexisting non-conforming conditions," were conditions unique to the site. The court was also satisfied the proposed development would, in fact, reduce some existing non-conformities by eliminating the detached garage, adding new drainage to the area, and increasing conforming parking.

As to the other subsection (d) variances, the trial court concluded "the Board adequately addressed the height variance sought and its impact upon the surrounding properties," that the Board consulted the architectural plans and was

familiar with the proposed building's "relation to the sloping land," and that the Board adequately considered testimony regarding density issues and the FAR variance. The court expressly noted in this regard that "[t]he Board did not receive any contrary expert testimony during the hearing."

This appeal ensued. Plaintiffs principally argue the Board and the trial court lacked adequate evidence to support the special reasons necessary for a use variance under subsection (d)(1). In addition, plaintiffs contend the record likewise does not justify the area, bulk, yard, and other variances that were approved. They urge that we reverse the trial court and vacate the approvals.

## II.

The scope of judicial review in land use cases is limited. It is well established that "the law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons [and] will be set aside only when it is arbitrary, capricious and unreasonable." Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965); see also Friends of Peapack-Gladstone; 407 N.J. Super. 404, 424 (App. Div. 2009) (affirming the "judiciary's limited standard of review of local land use decisions"). Those who challenge the local board's actions, such as the objectors here, have the burden of proving the decision is arbitrary, capricious, and unreasonable. See Dunbar

A-3067-18T2

Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018).

A reviewing court may not substitute its judgment "for the proper exercise of the Board's discretion." CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super. 563, 578 (App. Div. 2010). That said, a land use board's interpretation of the law is reviewed de novo. Dunbar Homes, 233 N.J. at 559.

Applying these cardinal principles of judicial review here, we reject plaintiffs' contentions of error. We affirm the trial court's decision upholding the Board's approval of V&R's application, substantially for the sound reasons expressed in Judge Gregg A. Padovano's detailed written opinion. We only add a few comments.

First, we discern no procedural infirmity in how the Board proceeded with the hearing in this case. The Board fairly considered the lay testimony of both plaintiffs as well as that of other neighbors who opposed the project. The Board considered photographs the plaintiffs had taken of the property and the surrounding area, and their contentions that the project would obstruct lines of sight at the nearby crosswalk and create unsafe traffic patterns. The Board did not misapply its authority in declining to consider certain traffic analyses that

7

Mr. Peters, a former Board member, had performed, because he admittedly is not a qualified expert witness. See N.J.R.E. 701 and 702 (distinguishing between admissible and inadmissible opinion testimony by experts and non-experts).

The Board applied its authority under N.J.S.A. 40:55D-10(d) to impose "reasonable limitations" on the hearing. As the trial court noted, although the hearing got off to an "acrimonious start" when there was a dispute about the placement of defendant's expert's exhibits, a review of the whole record did "not reveal any egregious behavior" of any participants that would ultimately affect the decision. The Board allowed plaintiffs and any other objectors to ask questions and present opposing information. In fact, the record shows plaintiffs questioned V&R's experts extensively and were able to submit their own evidence into the record. The Board properly limited certain lines of questioning, rejected expert evidence that was proffered by the lay-witness plaintiffs, and otherwise appropriately managed the hearings. Plaintiffs' assertions of procedural unfairness are meritless.

Second, despite plaintiffs' arguments to the contrary, there is ample proof in the record to support the findings of the Board and the trial court that V&R had presented adequate special reasons to justify the use variance for a two-

family dwelling. As the trial court noted, the Board reasonably found that V&R had met its heightened burden to obtain such a variance under subsection (d)(1) and pertinent case law, see Medici v. BPR Co., 107 N.J. 1, 18 (1987), and appropriately weighed the applicable positive and negative criteria in favor of the applicant.

The Board had the prerogative to find persuasive and credible the testimony of V&R's testifying experts, whose qualifications are unrefuted. A land use board "has the choice of accepting or rejecting the testimony of witnesses, and where reasonably made, such decision is conclusive on appeal." Cox & Koenig, New Jersey Zoning & Land Use Administration, § 18-4.2 (2019); See also Sea Girt, 45 N.J. at 288 (same); Bd. of Educ. of City of Clifton v. Zoning Bd. of Adjustment of City of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009) (same, and citing cases).

As we have already noted, the record includes, among other things, evidence that: (1) the new development would not increase the residential density of the area because there was already a non-conforming two-family unit on the property; (2) the neighborhood already had a mix of one- and two- family homes, (3) the variances were needed to accommodate the sloped topography

A-3067-18T2

and corner layout of the property; and (4) the property could physically accommodate the variances.

Many of these same rationales were cited approvingly by the Supreme Court in Price v. Himeji, LLC., 214 N.J. 263, 293 (2013), in which the Court clarified the standards for subsection (d)(1) use variances and approved a multi-family residential development. In Price, the Court described the developer's expert's testimony in detail, and concluded that through this testimony and other proofs, the developer "amply met its burden of demonstrating this special reason for the use variance it requested." Ibid.

Several rationales cited approvingly by the Court in Price are pertinent here. For instance, in Price a proposed multi-family use was not permitted in the zone; however, the parcel was "across the street" from a zone where the use was permitted. Id. at 274. Likewise, in the present case the proposed two-family unit replaces another two-family unit and is closely adjacent to several other multi-family properties.

Plaintiffs cite Cerdel Constr. Co., Inc. v. East Hanover Tp., 86 N.J. 303, 306 (1981) for the proposition that merely being adjacent to another zone where a use would be allowed is not sufficient to grant a use variance. However, in Cerdel the developer sought to build a "professional building" on a plot of land

A-3067-18T2

with a pre-existing one-family residence in a one-family zone.  Id. at 305. Although the property abutted a commercial zone, the Supreme Court held this was insufficient to meet the "special reasons" required for a use ordinance.  Id. at 307.  By contrast here, V&R is seeking to replace an existing two-family nonconforming dwelling with another two-family building, maintaining the basic character of the property, and has provided numerous other reasons why the new development is appropriate to this particular property.  Cerdel is inapposite.

We also note that in Price the developer argued that demolishing the preexisting buildings on the property, which were in need of "substantial rehabilitation and development" and replacing them with the proposed project, would improve the surrounding neighborhood.  Price, 214 N.J. at 275.  Here, the Board similarly concluded that the current property was dilapidated, and that replacing it with newer residential housing was consistent with the Fort Lee Zoning Ordinance and Master Plan.

Other positive elements of the new development here included improving the drainage on the property, adding sidewalks where none currently existed, and increasing certain setbacks, which were also tied to the Zoning Ordinance and Master Plan.

For these and many other reasons, we concur with the trial that the Board had ample grounds in the record to approve the requested (d)(1) use variance.

Similarly, we agree with the trial court that the Board reasonably approved the other variances that V&R sought. The height variance was supported by unrefuted expert testimony. The Board duly considered the concerns of plaintiffs and certain other neighbors that the higher new building would block light upon their own properties. Nonetheless, considering the overall context of the neighborhood, the Board had a reasonable basis to approve the height variance. Likewise, the density and FAR variances have reasonable support in the record. The same is true of the bulk variance and other relief granted under subsection (c).

We reject plaintiffs' contention that the Board's resolution was fatally incomplete. Although some aspects of the resolution could have been more detailed, or more carefully proofread, we agree with the trial court that the findings set forth in the resolution passed muster under N.J.S.A. 40:55D-10(g).

The remaining points raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3067-18T2