144 N.J. Super. 509 (1976)
366 A.2d 696
LEON N. WEINER & ASSOCIATES, INC. AND SPENCER C. OSSMAN, PLAINTIFFS-RESPONDENTS, AND THE HOUSING AUTHORITY OF THE BOROUGH OF GLASSBORO, PLAINTIFF-INTERVENOR-RESPONDENT,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF GLASSBORO, AN AGENCY OF A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1976.
Decided October 29, 1976.
*511 Before Judges CARTON, KOLE and LARNER.
*512 Mr. Albert J. Zamal argued the cause for defendant-appellant (Messrs. Hannold, Caulfield & Zamal, attorneys).
Mr. Edward A. Penberthy argued the cause for plaintiffs-respondents (Messrs. Brandt, Haughey, Penberthy & Lewis, attorneys).
Mr. Sidney R. Granite argued the cause for plaintiff-intervenor-respondent (Messrs. Granite and Granite, attorney).
Mr. Carl S. Bisgaier, Deputy Director of the Public Advocate's Office, Division of Public Interest, argued the cause for the Public Advocate, amicus curiae (Mr. Stanley C. Van Ness, Public Advocate, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff Leon N. Weiner & Associates, Inc. (Weiner) applied to the Zoning Board of Adjustment of Glassboro (board) for a section(d) variance (N.J.S.A. 40:55-39(d)) to permit the construction of a 40-unit housing development for senior citizens. The board held a plenary hearing, after which it denied the application. Plaintiff sought relief by an action in lieu of prerogative writs which culminated in a judgment of November 10, 1975 reversing the board's denial and directing it to recommend to the borough council that it grant the variance as sought by plaintiff.
Subsequent to the board filing a notice of appeal, other activity took place at the trial and local levels. On January 9, 1976 the trial judge denied a motion to stay the judgment and implemented the judgment by directing the board to act on the court's order at its next meeting on January 21, 1976. On the latter date the board complied by recommending the variance to the borough council. On February 10, 1976 the council failed to grant the variance and remanded the matter to the board. Upon further application to the *513 court, another order was entered on May 14, 1976 to the effect that the board's action was to be considered as an affirmative recommendation of the variance. Thereafter, the Council adopted a resolution rejecting the board's recommendation, and that is now the subject matter of a pending action against the borough council.
Since the latter litigation is not before us and the borough is not a party to this appeal, we shall consider the matter strictly as an appeal from the judgment overruling the denial of the variance by the board.
Plaintiff is a developer with an option to purchase a tract of land containing 2.92 acres in the R-3 zone of the borough of Glassboro. This zone is designated in the borough ordinance as a district for one and two-family residences with the following area and bulk regulations pertinent to plaintiff's application: (1) minimum area of 5,000 square feet per dwelling unit, (2) 50-foot frontage per dwelling unit, and (3) one parking space for each dwelling unit.
Plaintiff entered into this project through a proposal to the Glassboro Housing Authority to construct on the site a senior housing development under a plan adopted pursuant to federal regulations promulgated by the Department of Housing and Urban Development (HUD). Under this plan the developer purchases the land and constructs the project in accordance with specifications approved by the Authority, and HUD and conveys the same to the Authority which thereafter owns and operates the housing facility.
In view of the fact that the proposed plan violates several ordinance limitations applicable to the R-3 zone, plaintiff's application sought multiple variances. It requested permission to construct a cluster-type housing development with bulk variances relating to the number of dwelling units in a building, reduction of the floor space per dwelling unit, elimination of the minimum frontage requirement and reduction in available parking spaces.
In reversing the determination of the board the trial judge held that the proposed use for senior citizen housing constitutes *514 a valid "special reason" under N.J.S.A. 40:55-39 (d) and that, as a consequence, the granting of the requested bulk variances is "implicit in the granting of the use variance." In addition, it concluded that the board's determination that the negative criteria of the statute were not met was unwarranted on the record before the board.
The board concedes in its resolution and in its appellate argument that there is a need for additional senior citizen housing in the community and that such a use through semipublic accommodations is an appropriate basis for a special reason variance. DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 442 (1970). The central theme of its position, however, is that the applicant failed to bear the burden of proving compliance with the negative criteria so far as the bulk variances affect the district selected by plaintiff to construct this development.
At this point it is well to iterate the function of the trial court in reviewing the action of a board of adjustment which results in the denial of a variance. We pointed out in Kenwood Assocs. v. Englewood Bd. of Adj., 141 N.J. Super. 1 (App. Div. 1976):
It has been emphasized over and over again in the many cases on the subject that the role of a judge in reviewing a local variance determination is solely to ascertain whether the action of the board is arbitrary. He cannot substitute his own judgment for that of the municipal board invested with the power and duty to pass upon the application. Stolz v. Ellenstein, 7 N.J. 291 (1951); Peoples Trust Co., etc. v. Hasbrouck Heights, etc., 60 N.J. Super. 569 (App. Div. 1959).
The action of the board is presumed to be valid. Rexon v. Haddonfield Bd. of Adj., 10 N.J. 1, 7 (1952); Bove v. Emerson Bd. of Adj., 100 N.J. Super. 95, 101 (App. Div. 1968). And particularly where the board has denied a variance, plaintiff has the heavy burden of establishing that the evidence is so overwhelming in support of the variance that the board's action can be said to be arbitrary and capricious. Rexon v. Haddonfield Bd. of Adj., supra; Ring v. Rutherford Mayor and Council, 110 N.J. Super. 441 (App. Div.), certif. den. 57 N.J. 125 (1970), cert. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971). See Cummins v. Leonia Bd. of Adj., 39 N.J. Super. 452, 460 (App. Div. 1956).
*515 In this connection it should be noted that the absence of evidence in support of the denial does not in itself mean that the Board's determination is arbitrary. Since the burden rests with the applicant to establish the criteria for the grant of the variance, it must demonstrate that the affirmative evidence in the record dictates the conclusion that the denial was arbitrary. [at 4-5]
See also Mahler v. Fair Lawn, 94 N.J. Super. 173 (App. Div. 1967), aff'd 55 N.J. 1 (1969).
Our examination of the trial judge's written opinion convinces us that he misconceived his role in the review of the determination of the local board. He utilized an improper standard. As he expressed it, "In an action in lieu of prerogative writ, the function of this court is to review the facts and make independent findings." Such a standard of review is contrary to the established rules as set forth in the cases cited supra.
In effect, the trial judge reviewed the record and made an independent finding that the variances should be granted. In this regard he went beyond his limited power and substituted his judgment for that of the local agency having the discretionary authority to grant or deny the variances.
Although this court accepts the beneficent public welfare purpose of encouraging housing for senior citizens and the propriety of such a use as a permissible ground for a special reason variance, it does not necessarily follow that such a use variance must be granted regardless of the character of the district involved and the departure from the bulk and density requirements of that district.[1] See *516 Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 294 (1965). The deviations proposed by the applicant are substantial in nature. They require bulk and density variances permitting ten four-family dwellings and a community recreational building instead of the ordinance maximum of two dwelling units per structure, an area of 3,000 square feet per dwelling unit instead of 5,000 square feet called for by the ordinance, a waiver of the 50-foot frontage requirement in view of its inapplicability to the proposed cluster arrangement of the building units, and a reduction in the requisite parking spaces from one for each dwelling unit to approximately one parking space for two units.
The board in its resolution recognized that the general use for senior housing was a valid special reason and that the proposed parking facilities were reasonably adequate. However, it concluded that
* * * [T]his area is a higher type of residential area and that to permit this type of construction at this particular location would impair the development of the comprehensive plan and would substantially impair the intent and purpose of the Zoning Ordinance. Appellant has not carried the burden of showing the Board why the present Zoning Ordinance should be varied. The new master plan developed by the Glassboro Planning Board, but which has not yet been adopted, does not provide for this proposed housing density.
This finding reflects the opinion of the board that the applicant failed to prove that the proposed use of construction in this district met the negative criteria of N.J.S.A. 40:55-39, namely, that "the intent and purpose of the zone plan and zoning ordinance" will not be substantially impaired. It was not the burden of the board to find affirmatively that the plan would be substantially impaired (although it did so in the instant case). It was, rather, the burden of the applicant to prove the converse. See Ring v. Mayor, Rutherford and Council, 110 N.J. Super. 441, 445 (App. Div. 1970), certif. den. 57 N.J. 125 (1970), cert. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971).
*517 The record reveals that the area surrounding the tract in question is built up exclusively with conforming one and two-family homes, having the requisite frontage and living area mandated by the ordinance. A substantial number of district residents objected to the variances in writing and in person on various grounds, including the erosion of the zoning plan and character of the neighborhood by the added density proposed by the applicant, the minimal living space, the removal of trees and shrubs and the detrimental effect on property values.
The report of the municipal planners relating to the project recommended that senior citizen housing be encouraged at the site, provided that the density be limited to ten dwelling units per acre, or a total of 29 units instead of the requested 40 units. The master plan of Glassboro was under consideration at the time of the board hearing and was finally adopted by the governing body on August 19, 1975, before the court rendered its decision. In that master plan the municipality set aside several tracts of land which would accommodate the requirements proposed by the developer and the housing authority, while the density requirements of the current zoning regulation are retained therein for the district involved in this litigation. Furthermore, the current zoning ordinance designates five districts, known as R-5, wherein the construction, bulk and density requirements of the applicant can be met without variances and where much of the land is still undeveloped. In fact, the housing authority currently operates 80 senior citizen housing units in these R-5 districts.
It is therefore apparent that the board has not acted in an arbitrary or exclusionary manner in the denial of the variances. Plaintiff and the housing authority can construct their senior housing project on the proposed site if they reduce the density proposal to accord with that particular district, or they can select a site in one of the R-5 districts where the proposed project is legally permissible in whole without the necessity of variances. They have no absolute *518 right to construct a project of any size or shape in a district selected by them, merely on the thesis that senior housing promotes the public welfare.
Counsel for respondents rely mainly on the case of DeSimone v. Greater Englewood Housing Corp. No. 1, supra, 56 N.J. 428, and the underlying principles articulated in the recent opinions of the Supreme Court in Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249 (1976), Shepard v. Woodland Tp. Committee, 71 N.J. 230 (1976), and So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975).
A significant distinction must be recognized between the issue of validity of zoning legislation relating to senior housing which was before the court in Weymouth and Shepard and the issue of the propriety of a variance denial by a local board of adjustment. Manifestly, under Weymouth a municipality has the right to create a district for senior citizen housing within the public welfare purpose of zoning. Shepard affirmed the power of a municipality to permit such a senior citizen housing use in a residential-agricultural district by way of a "special use" exception. It cannot be gainsaid that if the governing body of Glassboro provided for such a use by the designation of districts in the zoning ordinance or by a special exception procedure, there would be no question as to the validity of its legislative action.
However, the legal consequences of permissible comprehensive zoning regulations to encourage senior housing (Weymouth and Shepard, supra) or to provide other uses mandated by law (So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp. supra) are a far cry from those flowing from the action of a board of adjustment in denying a variance where such zoning regulations do not exist. As already noted, in the case of a variance the appellate issue is a narrow one: whether the discretionary and presumptively valid act of the Board's denial is so arbitrary as to require judicial correction.
*519 DeSimone did involve an appeal from the granting of a special reason variance for the construction of a low and moderate-income cluster housing project in a one-family residential zone. The Supreme Court affirmed the action of the local board in granting the use variance and the bulk variances incidental to the proposed use. Nevertheless, the holding in that case does not control the issues in our case.
In the first place, in DeSimone the board found on sufficient evidence that the negative criteria were met in that
* * * by reason of the location, topography and isolation of the tract in question, as well as the design and layout of the structures proposed to be erected, such adverse effect as the proposed multi-family use may have on nearby one-family uses will be minimal, and that the relief requested may, accordingly, be granted without substantial detriment to the public good and without substantial impairment of the intent or purpose of the zone plan or zoning ordinance. [56 N.J. at 442].
This finding was buttressed by the fact that the purpose of the project was to clear and reconstruct blighted areas in a predominantly black district where the housing was substandard, to relocate the slum residents and to provide decent, sanitary and safe living accommodations for them outside of the ghetto area. In fact, the tract of land to be developed was "the only available tract of suitable size in the City outside the racially-impacted area." 56 N.J. at 437. Furthermore, the site was found to be located in the extreme southerly end of the city and isolated from existing residential uses. The area was hilly, wooded and unimproved except for a neighborhood park and city-owned parkland in a natural state. The closest existing dwellings were such a distance from the site that the location of only one or two of them would permit the residents to see the project buildings.
This factual picture, which impelled the board to find compliance with the negative criteria and the court to sustain such a finding, is in sharp contrast with that which obtains in this case, where the project is admittedly in the center *520 of an established neighborhood of one and two-family homes conforming with the zone plan.
What is more significant in the distinction between DeSimone and the present case is that DeSimone was an appeal from the grant of a variance and the appeal herein is from a denial of a variance. This distinction brings us back to the earlier discussion of the limited judicial function in revewing the local determination. It is not for us or the trial court to impose our view of the merits of the application. Whether the board in this instance granted or denied the variance, its action would be sustainable on appeal. We do not engage in the process of selecting the result which may accord with our independent judgment. We sinply test the local action against the evidence in the record, and if the board's discretionary judgment, whether for or against the variance, is fairly sustainable by the record, the court's function must result in an affirmance of its decision.
In this connection, we refer to the words of the Supreme Court in Ward v. Scott, 16 N.J. 16 (1954):
* * * Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for variance. [at 23]
Taking into consideration the presumption of validity of the action taken by the local board and its primary responsibility and discretion to maintain the integrity of the zoning scheme, we conclude that the board's determination that plaintiff failed to establish compliance with the negative criteria of the statute is reasonably justified by the record. We therefore cannot say that the denial of the variance was arbitrary or capricious so as to warrant judicial intervention.[2]
*521 We therefore reverse the judgment below and direct the entry of a judgment in favor of the defendants sustaining the board's denial of the variances.
NOTES
[1] It is of interest to note that the Municipal Land Use Law which became effective August 1, 1976 (N.J.S.A. 40:55D-1 et seq.) sets forth as one of the purposes of zoning the encouragement of senior citizen community housing. However, this forward-looking legislation recognizes the limitation of such senior citizen housing by the proviso:

To encourage senior citizen community housing construction consistent with provisions permitting other residential uses of a similar density in the same zoning district. [N.J.S.A. 40:55D-2(1); emphasis supplied]. See also, 40:55D-65(g). Variance procedure is retained in 40:55D-70.
[2] The trial judge admitted into evidence an affidavit of Harry Jackson, executive director of the housing authority. The admission of such evidence which was not before the Board of adjustment was improper. Kramer v. Sea Girt Bd. of Adjust., 45 N.J. 268, 289 (1965). As a consequence we have not considered that affidavit in our determination.