720 A.2d 626 (1998)
316 N.J. Super. 451
MENLO PARK PLAZA ASSOCIATES, Plaintiff-Appellant,
v.
PLANNING BOARD OF the TOWNSHIP OF WOODBRIDGE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1998.
Decided December 4, 1998.
*627 Steven J. Tripp, Woodbridge, for plaintiff-appellant (Wilentz, Goldman & Spitzer, attorneys; Stephen E. Barcan, of counsel; Mr. Barcan and Donna M. Jennings, on the brief).
Marc J. Rogoff, Fords, for defendant-respondent.
Before Judges BAIME, A.A. RODRIGUEZ, and KIMMELMAN.
The opinion of the court was delivered by KIMMELMAN, J.A.D.
Plaintiff, the proposed developer of eighty-two single-family units on a forty-five acre tract owned by it in Edison Township (Edison), appeals from the Law Division's affirmance on a trial de novo of defendant's denial of minor subdivision and site plan approval sought by plaintiff to open up and create a through street on an undersized vacant lot in Woodbridge Township (Woodbridge) adjoining its Edison tract. Plaintiff was and is the contract purchaser of the undersized lot which fronts on a dead-end street in Woodbridge. Plaintiff proposed to utilize the lot as a roadway inlet and outlet to channel traffic to and from its planned development in Edison into Woodbridge.
In 1995, the Edison Planning Board granted approval to plaintiff to develop its forty-five acre tract provided that the existing access to the tract from U.S. Route 1 not be extended through roads to be constructed in the proposed development into existing Edison Streets. No Edison street was to be used as a second access point in or out of the development other than the Route 1 access point and the interior roads to be built in the proposed development were designated by the Edison Municipal Council as dead-end streets. As a result, the Edison Planning Board's approval was conditioned on plaintiff constructing a secondary access to the forty-five acre tract through the adjoining Woodbridge lot thereby opening up what *628 theretofore had been a dead-end Woodbridge street.
At that point in time, Woodbridge commenced an action in lieu of prerogative writs against both plaintiff and the Edison Planning Board seeking to overturn the approval granted to plaintiff. Plaintiff filed a similar complaint seeking a judicial grant of the approvals it needed to open up the undeveloped lot as a through street from its proposed development into the Woodbridge dead-end street. The cases were consolidated and plaintiff was directed to apply "to the appropriate Board of Woodbridge Township for [such] approvals as may be required under the Municipal Land Use Law for its proposed roadway connection from its proposed single-family development in Edison to South Oak Avenue [the dead-end street] in Woodbridge Township."
Formal application before defendant was then made by plaintiff, hearings were held, and documentary evidence and testimony, pro and con, was presented. On November 13, 1996, defendant formally denied plaintiff's application by unanimous vote finding that Woodbridge never envisioned that the subject lot be used as a right-of-way for the transformation of the dead-end street, South Oak Avenue, into a significant thoroughfare; that the police and fire departments had identified potential adverse impacts; that the character of the neighborhood and the property values of neighboring properties would be negatively affected; and, that the construction of the cut-through roadway designed to service the eighty-two new homes to be built in Edison provided no benefit to Woodbridge. Pertinent excerpts from defendant's resolution follow:
15. The applicant is proposing to subdivide forty-five (45) acres of land, almost entirely located within the Township of Edison, in order to create eighty-two (82) single-family dwelling building lots and two (2) other lots. The property lies parallel to U.S. Route # 1 northbound, and adjoins the PSE & SG property to the north and the Woodbridge Township boundary line to the east. The portion of the subdivision lying within Woodbridge Township consists of Lot 6A in Block 341-A, a wedge shaped 4,191 sq. ft. parcel that maintains frontage along South Oak Avenue in Fords.
16. The applicant is also proposing a roadway system in order to service the development project with several short interior roads. The main street will intersect with U.S. Route # 1 northbound, slightly west of Parsonage Road, traverse the development, and terminate at an intersection with South Oak Avenue.
17. The issue critical to Woodbridge Township residents is that the applicant further proposes to use a 50' wide, 40' long strip of Lot 6A as road right-of-way, in order to connect the eighty-two (82) dwelling units located entirely within Edison Township, through this lot to South Oak Avenue in the Fords section of Woodbridge Township. The remaining 654 sq. ft. of land to the north of the road is to be annexed to building Lot 84 in Edison. The remaining 1,252 sq. ft. to the south is to be deeded to Lot 1 in Edison.
18. The proposed access to the site is a driveway on U.S. Route # 1 and, at the other end, South Oak Avenue in Fords. The area of South Oak Avenue is zoned R-6 Single-Family Residential.
19. The entire project involves the construction of eight-two (82) single-family homes; two (2) common area lots; and, detention basins located entirely within the Township of Edison. This project was previously approved by the Edison Township Planning Board on August 3, 1995, by a six (6) to two (2) vote. The South Oak Street access is critical to the project and was part of the "deal" struck by the applicant struck [sic] with Edison residents originally opposed to the project.
20. The applicant agreed to a deed restriction in the application before the Edison Township Planning Board, which essentially eliminated access by any other interior roads located within the site in Edison Township. Additionally, the Municipal Council of the Township of Edison adopted Ordinance 0.899-95, which amended Chapter 82Article XVIIISection 82-47, designating Harley Road, Harmon Road, Nora Road and Harris Road as "dead-end streets", [sic] This effectively eliminated any other access to or from the *629 site within Edison, other than U.S. Route # 1.
21. The applicant chose to strike a deal with Edison Township residents without the direct participation, intervention or concerns of the interests of Woodbridge Township residents, and sought approval of the proposed subdivision through Lot 6A in block 341-A, a wedge shaped 4,191 sq. ft. parcel which maintains frontage on South Oak Avenue in Fords. All of the impact of the eighty-two (82) home subdivision/development in Edison Township will fall upon the residential dead end street of South Oak Avenue, Fords, and Woodbridge Township residents.
....
23. The Fords Fire Prevention Bureau report dated April 23, 1996, opposed the development application to subdivide and construct a road through Lot 6A in Block 341-A in Woodbridge, due to heavy traffic conditions that already exist in the area; more specifically, the area of Burnham Drive and Lafayette Road, both of which are already utilized as a short cut route to exit U.S. Route # 1 north, to get to Ford Avenue from South Oak Avenue. The report further stated that further congestion in the area could seriously delay emergency equipment and fire apparatus.
24. Applicant's engineering expert, John Chester, testified that the applicant did not make any application to utilize the four (4) existing roads within Edison Township because that access would require crossing wetlands. He further testified that such a wetlands permit would be difficult, if not impossible, to obtain; and

THE BOARD FURTHER FINDS,
1. The proposed lot size of 4,191 sq. ft. is substantially undersized for the R-6 Zone. While the applicant does not propose to construct a dwelling on the lot in question, the proposed road creates a subdivision which will result in the transfer of two (2) small portions on either side of the lot, to the other parcels in Edison.
2. The proposal violates minimum lot area; minimum lot width; and, minimum lot depth requirements of the zone, whether you view the parcel as a whole or you take each parcel which is actually created by the development project. The plans refer to parcels on either side of the proposed road as "parcels No. 1 and No. 2". [sic]
3. The subdivision of Lot 6A for the purpose of construction of roadway designed to service eighty-two (82) new homes situated in Edison Township, provides no benefit to the residents of the Township of Woodbridge. This subdivision will only result in a detriment to the surrounding residential homes located in Woodbridge.
4. The plans drawn by the Township of Woodbridge for this section of the town, including the official street map, and the Mater [sic] Plan and zoning ordinance, do not envision the addition of another public street for this area. South Oak Avenue, at this terminus, has existed as a dead end street for the last twenty-seven (27) years.
5. The Planning Board's real estate expert, Joseph E. Tighue, testified that there were no positive impacts by virtue of this proposal, to the zone in Woodbridge. There could only be negative impact to property values in the surrounding residential area located in Woodbridge, due to the construction of detention basins adjacent to lots in Woodbridge. He further testified that a road on Lot 6A would provide the eighty-two (82) residential dwelling units in Edison with access to and from South Oak Avenue, which has been a dead end street for almost thirty (30) years.
6. The applicant has failed to present sufficient, competent and credible evidence in order to justify deviating from the bulk requirements of the R-6 Zone.
7. The applicant has failed to provide expert testimony to support his contention that the benefits of the development application outweigh the detriments to the zone plan and/or Master Plan of the Township of Woodbridge.
8. No undue hardship or exceptional practical difficulty relating to the property was shown or would result from the strict application of the zoning regulations.

*630 9. Reports from the Fords Fire Prevention Bureau and Traffic Safety Division of the Police Department of Woodbridge identify adverse impacts to the residents of the township.
10. Neither the official street map, tax map, Master Plan or zoning ordinance contemplated the addition of another public street to the area, which is the subject matter of this development application.
11. The inclusion of a street on a lot which, for all intents and purposes, was to be used as a building lot for a single-family dwelling, will impact and irreversibly alter the character of the neighborhood. Had the township envisioned or contemplated the addition of such a roadway, the design would have been vastly different and located elsewhere. This design, at a minimum, would have been included in the Master Plan, its' [sic] updates and amendments. Such a concept was not included because this area between U.S. Route # 1 and Ford Avenue already suffers significantly with the burden of through traffic trying to avoid the U.S. Route # 1 ad [sic] Ford Avenue traffic light.
12. The proposed roadway also necessitates several design waivers from the minimum grade and curb line radius requirements, which are not justified.
13. The character of the neighborhood from a dead end street to a significant thoroughfare servicing eighty-two (82) homes, will be adversely altered.
14. The aesthetic character of the neighborhood will be adversely impacted upon due to the proposed drainage basin abutting township residential dwellings.
15. The traffic generated on-site will be significant and far greater than envisioned for South Oak Avenue or the immediate and surrounding area.
16. The relief requested can not [sic] be granted without substantial detriment to the public good or general welfare and will substantially impair the intent and purpose of the Master Plan, zone plan or Land Use and Development Ordinance of the Township of Woodbridge.
17. There will be an adverse effect on property values in the area and values will be depreciated by the granting of the requested approvals.
NOW THEREFORE LET IT BE RESOLVED, that the Planning Board of the Township of Woodbridge does hereby deny minor subdivision/minor site plan approval and bulk variances effective September 18, 1996, to Menlo Park Plaza Associates, for the property located at South Oak Avenue, Fords, New Jersey, known and designated as Block 341-ALot A, and which is more specifically shown on site plan consisting of seven (7) sheets entitled, "Preliminary Subdivision PlanMenlo Park Plaza Block 694Lots 1A, 2A, 3, 4A, 5, 6B, 7F, 12C, 12E, 12G, 12H1, 13ABlock 1216 Lot 16Township of EdisonMiddlesex CountyNew JerseyDated: March 31, 1995 and revised through November 6, 1995", [sic] as prepared by the Chester Partnership)ArchitectureEngineering PlanningSurveying;and, sketch plat consisting of two (2) sheets entitled, "Major SubdivisionMenlo Park Plaza Lot 6ABlock 341-ATownship of WoodbridgeMiddlesex CountyNew Jersey Dated: December 20, 1995 and revised through February 7, 1996", [sic] as prepared by The Chester PartnershipArchitecture EngineeringPlanningSurveying.
Minor subdivision/minor site plan approval and bulk variances are hereby denied effective September 18, 1996, pursuant to motion adopted by the Planning Board of the Township of Woodbridge.
Initially, plaintiff contends that defendant was obliged to accept plaintiff's application since its proposed use of the Woodbridge lot does not fall within the Municipal Land Use Law's definition of a subdivision, N.J.S.A. 40:55D-7, and since the proposed road met all other standards relating to its design. We disagree with plaintiff. The proposed road through the lot will result in two slivers of land on either side of the fifty-foot wide roadway, 654 square feet of land to the north and 1252 square feet of land to the south. The resultant slivers constitute a division of land into two or more parcels and, in effect, comply with the definition of a development under N.J.S.A. 40:55D-4 which, *631 in turn, constitutes a subdivision under N.J.S.A. 40-55D-7 and triggers the necessity for a hearing and approval under N.J.S.A. 40:55D-10a.
Plaintiff further contends that assuming bulk variances were required, it established undue hardship and satisfied both the affirmative and negative criteria under N.J.S.A. 40:55D-70. Our consideration of this issue is guided by the general principles of law pertaining to zoning matters.
Variance questions are entrusted to the sound discretion of the municipal board hearing the application. Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 558, 542 A.2d 457 (1988). The Legislature has recognized that local people familiar with the community's characteristics and interests are best equipped to assess the merits of a variance application. Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954); Hawrylo v. Board of Adj. of Harding Twp., 249 N.J.Super. 568, 578, 592 A.2d 1236 (App.Div.1991). Accordingly, a court reviewing a municipal board's action on zoning and planning matters, such as a variance application, is limited to determining whether the board's decision was arbitrary, unreasonable or capricious. Kramer v. Board of Adj. of Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965); Medical Realty v. Board of Adj. of the City of Summit, 228 N.J.Super. 226, 233, 549 A.2d 469 (App.Div. 1988). Judicial review is intended to be a determination of the validity of the board's action, not substitution of the court's judgment therefor. Rowatti v. Gonchar, 101 N.J. 46, 51-52, 500 A.2d 381 (1985); Weiner & Assocs., Inc. v. Zoning Bd. of Adj. of Glassboro, 144 N.J.Super. 509, 515, 366 A.2d 696 (App.Div.1976), certif. denied, 73 N.J. 55, 372 A.2d 320 (1977). Basically, the reviewing court must determine whether the board below followed the statutory guidelines and properly exercised its discretion. Burbridge v. Governing Body of Twp. of Mine Hill, 117 N.J. 376, 385, 568 A.2d 527 (1990). The reviewing court will give greater deference to a board's decision to deny a variance. Galdieri v. Board of Adj. of Twp. of Morris, 165 N.J.Super. 505, 515, 398 A.2d 893 (App.Div. 1979).
Plaintiff's bulk variance application was sought under N.J.S.A. 40:55D-70(c) where both positive and negative criteria must be shown. A bulk variance is authorized if positive criteria can be shown that the hardship arises:
(a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or
(b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or
(c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any [zoning regulation] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the developer of such property[.]
In addition to satisfying the above positive criteria, an applicant seeking a hardship variance must also satisfy the statutorily imposed negative criteria that:
[S]uch variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

[N.J.S.A. 40:55D-70d.]
See Nash v. Board of Adj. of Twp. of Morris, 96 N.J. 97, 102, 474 A.2d 241 (1984). A court is constrained to focus not on the characteristics of the land that create a hardship on the owner warranting a relaxation of standards but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community. Kaufmann, supra, 110 N.J. at 563, 542 A.2d 457. A variance will not be granted when it is only the purposes of the owner which will be advanced. Kaufmann, supra, 110 N.J. at 562-63, 542 A.2d 457. The applicant bears the burden of producing a preponderance of competent and credible evidence to show that he or she meets the statutory prerequisites for a variance, a burden which applies to both the positive and negative criteria. Chirichello v. Zoning Bd. of Adj. of the Boro. of Monmouth Beach, 78 *632 N.J. 544, 559-60, 397 A.2d 646 (1979) and Weiner & Assocs., supra, 144 N.J.Super. at 516, 366 A.2d 696.
As heretofore indicated, defendant denied plaintiff's application after determining that it appeared from all relevant maps and plans that Woodbridge had never envisioned the subject lot being used as a right-of-way, and that the transformation of South Oak Drive into a significant thoroughfare would detrimentally alter the character of the neighborhood. Defendant also concluded that the subdivision of the subject lot for the purpose of constructing a roadway designed to service eighty-two new homes in Edison provided no benefit to Woodbridge. Defendant rejected plaintiff's position that the hardship was created because no other access way to its property was available (1) by reason of the condition of the Edison approval that the roadways to be constructed on the forty-five acre tract not exit onto existing roadways in Edison, and (2) by reason of the fact that because of extensive wetlands on the Edison property the necessary outlet road could not be situated elsewhere.
It is apparent that plaintiff's perceived hardship was self-created by plaintiff and by the action of the Edison officials that denied to plaintiff the right to open a road from U.S. Route 1 through the proposed development leading to interior roads already extant in Edison. Plaintiff was clearly unable to show that its proposal to turn a quiet dead-end residential street into a busy thoroughfare could be accomplished without substantial detriment to the public good or general welfare of Woodbridge. Plaintiff's desire for an outlet road from its proposed development into another municipality was to serve its selfish economic interest and had nothing to do with abstract principles of good zoning.
We have carefully reviewed the record and find that other contentions advanced by plaintiff are without merit. In sum, we may not conclude defendant's action was arbitrary, unreasonable, or capricious. See Kramer, supra, 45 N.J. at 296, 212 A.2d 153. The final judgment entered by Judge Wolfson on June 25, 1997, dismissing plaintiff's complaint in lieu of prerogative writs is affirmed.