**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1020-22

COFFEE ASSOCIATES, LLC,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

BOROUGH OF EDGEWATER
ZONING BOARD OF ADJUSTMENT
and THREE Y, LLC,

       Defendants-Respondents.

_____

ERIK C. DIMARCO,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

BOROUGH OF EDGEWATER
ZONING BOARD OF ADJUSTMENT
and THREE Y, LLC,

       Defendants-Respondents.

_____

Submitted February 27, 2024 – Decided July 16, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-4783-21, L-2755-22, and L-5588-22.

The Law Offices of Richard Malagiere, attorneys for appellant/cross-respondent Erik C. DiMarco (Richard Malagiere, Leonard E. Seaman, and Frank Rivellini, on the briefs).

Jeffrey A. Bronster, attorney for respondent/cross-appellant Coffee Associates, LLC.

Denise M. Travers, attorney for respondent Borough of Edgewater Zoning Board of Adjustment.

Beattie Padovano, LLC, attorneys for respondent Three Y, LLC (Daniel L. Steinhagen, on the brief).

PER CURIAM

In these three consolidated Law Division complaints in lieu of prerogative writs, plaintiffs Erik C. DiMarco and Coffee Associates, L.L.C. appeal and cross-appeal the trial court's order dismissing their challenge to defendant Borough of Edgewater Zoning Board of Adjustment's decision granting defendant Three Y LLC's application under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, seeking a height variance for its mixed-use development project. We affirm.

I.

2

Three Y's Development Project

Edgewater, like other communities bordering the Hudson River overlooking New York City, has been a prime site for developers seeking to transform former industrial sites into modern residential, retail, and commercial office space. In 2001, Three Y obtained Board site plan approval to construct a nine-story hotel on two lots it owned in Edgewater. In 2012, the Edgewater Planning Board amended its Master Plan creating a mixed-use zone covering the development project site.[1]

In October 2020, after the development project stalled due to site remediation, Three Y applied to amend the site plan approval to include multiple buildings, featuring a fifteen-story 170-room hotel, 150 apartments, a four-level parking garage, two restaurants, and a landscaped courtyard. Germane to this appeal is a variance request for the hotel's height to be 187.65 feet, a 70.6 percent increase over the zoning ordinance maximum limit of 110 feet. The Board's consideration of Three Y's application consumed four meetings. Three Y presented testimony of a professional engineer, traffic engineer, architect, and

_____

[1] In Edgewater, the Planning Board adopts and amends the Master Plan, while the Zoning Board interprets and enforces the zoning ordinance. Edgewater, N.J., Code §§ 240-13(A), 240-26(A).

3

urban planning expert. Counsel for the opposing neighboring towns of Cliffside Park and North Bergen cross-examined Three Y's witnesses, as did several North Bergen and Edgewater residents.

As a result of several Board members' concerns, Three Y agreed at the final hearing on May 13, 2021, to reduce the hotel's height to 162 feet by eliminating two floors with the other buildings being no taller than 156 feet tall. At the meeting's conclusion, the Board unanimously approved the application and granted all variances requested, including the reduced height variance. Later, on June 2, 2021, the Board memorialized its decision by unanimously adopting a resolution (2021 Resolution) setting forth its factual findings and identifying the exhibits and testimony the Board considered. As required by local ordinance, notice announcing approval of Three Y's application was published in the local newspaper.[2]

Coffee Associates' Claims

On July 19, 2021, Coffee Associates, which owns property across the street from the development project site, filed a complaint in lieu of prerogative writs against the Board and Three Y to void approval of Three Y's variance

---

[2] The notice is not included in the record, and the parties' submissions provide conflicting dates of June 5 or June 9 regarding the publication date.

application and the 2021 Resolution. The complaint alleged the Board failed to: (1) follow the notice requirements set forth in its local ordinance, Edgewater, N.J., Code § 240-36(B) and (J), and N.J.S.A. 40:55D-70(d); and (2) afford Coffee Associates proper notice "as a property owner within 200 feet of" the development project site.

While the action was pending, the Board issued an undated notice stating it would conduct a meeting on April 6, 2022, regarding Three Y's application as "previously considered at meetings of the [Board] that were held on [February 23, March 23, April 13,] and May 13, 2021" in order to "take corrective remedial action . . . to the extent required[] to address any claims that adequate notice of those meetings was not provided." The notice also stated Three Y did "not intend to produce any additional witnesses or evidence at the hearing, but will instead rely upon the hearing record created at those prior hearings," which was available to the public.

In response, Coffee Associates, on March 29, 2022, moved to dismiss its complaint as moot. However, the Board did not hold the scheduled meeting after two Board members' deaths left it without a quorum. On April 6, Three Y cross-moved for a limited remand to allow the Board to take corrective remedial action under the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21.

A-1020-22

The next day, Coffee Associates withdrew its motion to dismiss since the scheduled Board meeting did not occur.

On April 13, the trial court granted Three Y's cross-motion following a trial de novo. In its order and written opinion granting the cross-motion, the court remanded the matter to the Board to readopt the 2021 Resolution upon taking the appropriate remedial action. The order allowed Coffee Associates the right to amend its complaint if "readoption of the resolution is insufficient to cure any alleged [notice] defect."

DiMarco's Claims

DiMarco, an Edgewater resident, also filed a complaint in lieu of prerogative writs against the Board and Three Y to void approval of Three Y's variance application and the 2021 Resolution. The complaint alleged: (1) the 2021 Resolution was insufficient in granting the variances by "simply declar[ing] that the benefits outweigh the detriments"; (2) the Board acted arbitrarily, capriciously, and unreasonably; (3) the Board incorrectly found "the proposed development 'can be constructed without any significant adverse or detrimental traffic upon the adjacent roadway system'" or "decrease in the safety of residents in the area"; (4) Three Y failed to give proper notice to nearby

property owners as required by the MLUL; and (5) defendants failed to give proper notice to the public when Three Y presented its application to the Board.

The trial court subsequently granted the Three Y's motion to dismiss DiMarco's complaint on the grounds it was time-barred and he lacked standing to challenge the Board's decision. DiMarco appealed and this court reversed, concluding the development project's size warranted relaxing the time bar and DiMarco's status as an Edgewater resident conferred sufficient standing to challenge whether the Board "grant[ed] a major deviation from [Edgewater's] zoning ordinance." DiMarco v. Zoning Bd. of Adjustment, No. A-0416-21 (App. Div. May 18, 2022) (slip op. at 7-11).

Board's Remand Proceeding

Following the trial court's remand order, the Board met again on May 9, 2022. In view of the Board's two new members, its counsel stated on the record that the new members certified in writing they had "reviewed everything, including the transcripts of all those prior hearings" involving Three Y's application. Coffee Associates and Three Y's counsel addressed the Board; DiMarco did not attend the meeting and no other public member accepted an invitation to address the Board or Three Y.

The Board voted unanimously to approve Three Y's application for the same reasons set forth in the 2021 Resolution. The vote was memorialized in a second resolution (2022 Resolution) referencing the reasons set forth in the 2021 Resolution, which was appended as an exhibit. However, the fourteen-page appended resolution differed from the 2021 Resolution. First, the appended resolution was dated May 9, 2021, not June 2, 2021. Second, the appended resolution included a "Conclusions of Law" section that was not included in the 2021 Resolution. Though this section's contents largely mirrored the legal conclusions orally set forth at the Board's June 2, 2021 meeting, it misleadingly included three one-sentence paragraphs opposing the requested variances.

Coffee Associates and DiMarco's Renewed Challenge

Upon reviewing the 2022 Resolution, Coffee Associates amended its complaint, alleging the Board inadequately reapproved Three Y's application without first hearing new testimony or allowing the public to present new evidence. It also claimed the 2022 Resolution was procedurally void because the Board "improperly allowed alternate [Board members] to vote on the resolution notwithstanding the presence of three Board members who were neither 'absent' nor 'disqualified.'" Further, Coffee Associates claimed the Board

could not simply incorporate by reference the reasoning it previously set forth in the 2021 Resolution to comply with the trial court's remand.

DiMarco filed a new complaint in lieu of prerogative writs against the Board and Three Y, largely echoing the allegations in his first complaint and Coffee Associates' amended complaint. The trial court consolidated Coffee Associates' complaint and DiMarco's two complaints. Following a trial de novo, the court issued an order and written opinion affirming the Board's adoption of the 2022 Resolution. Plaintiffs appeal that order.

## II.

Our standard of review of a zoning board's decision to grant a variance is very generous; the reviewing court need only determine whether the zoning board's decision was supported by the record, as established during the hearings, and was not arbitrary, capricious, or unreasonable. See J.D. Constr. Corp. v. Isaacs, 51 N.J. 263, 270 (1968); Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965); Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 615 (App. Div. 2007). The reviewing court may not substitute its own independent judgment for that of the zoning board; review is limited to "whether the board could reasonably have reached its decision." Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987); Cummins v. Bd. of Adjustment, 39 N.J. Super. 452, 460 (App. Div. 1956).

Courts, however, generally show less deference towards grants than denials of use variances. Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 75 (App. Div. 2006). "Variances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 275 (1967); see also Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 385 (1990).

We review questions of law de novo. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 559 (2018). Zoning boards have "'no peculiar skill superior to the courts' regarding purely legal matters." Ibid. (quoting Chicalese v. Monroe Twp. Plan. Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

Guided by these principles, we separately address and reject plaintiffs' contentions on appeal.

Curing Prior Notice Defects

Coffee Associates contends the Board's readoption of the improperly noticed 2021 Resolution without hearing new testimony on remand violated the public's right to challenge Three Y's application "at properly noticed meetings." It cites the OPMA's plain language in N.J.S.A. 10:4-15(b), requiring a court to

"declare such action void" when "taken at a meeting which does not conform to the" statute.

Coffee Associates criticizes our high court's ruling in Polillo v. Deane, 74 N.J. 562, 577-78 (1977), because it "interpreted the remedial discretion of the judiciary much more broadly" than contemplated in the OPMA's literal language. Coffee Associates alternatively argues that even if Polillo were correctly decided, it did not afford the trial court the authority to find the 2022 Resolution satisfied the OPMA. (CPb13-14). It contends that, unlike the charter study commission's limited powers to only recommend ballot measures in Polillo, the Board has binding authority over variances, making its defective notice especially egregious by not conducting a new hearing.

Coffee Associates also contends the 2022 Resolution is procedurally void because "there is no way of knowing whether or not [the new Board members] agreed with, or even were cognizant of the [Board] making those findings" at the hearings culminating in the 2021 Resolution. Finally, Coffee Associates maintains the court erred by minimizing the substantial mistake of the appended resolution's three legal conclusions opposing Three Y's application. The legal conclusions were not merely a "scrivener's error" because they misinformed the

public and forced readers to figure out which portions of the appended resolution were correct.

DiMarco's contentions mirror Coffee Associates' challenge. He also claims the Board prohibited the public from conducting any cross-examination when it adopted the 2022 Resolution, as was done with the improperly noticed 2021 meetings.

As for the argument that Polillo was incorrectly decided because the record fails to evidence this argument was raised before the trial court, we should not even consider it. See Zaman v. Felton, 219 N.J. 199, 227 (2014) ("[D]eclin[ing] to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." (quoting State v. Robinson, 200 N.J. 1, 20 (2009))). Yet, even if we were to consider the argument, we have been presented no reasonable basis to contemplate that Polillo is no longer good law, nor to suggest that our high court should rethink its holding; Polillo's almost fifty-year-old standard remains sound.

The trial court's reliance on Polillo is firmly supported by the record. Polillo held the OPMA requires "strict adherence to the letter of the law . . . in

12

considering whether a violation of [the OPMA's provisions] has occurred." 74 N.J. at 578. But "substantial compliance" "carries some weight on the question of" how much "remedy and relief" is needed. Id. at 579. In permitting "remedial" measures, N.J.S.A. 10:4-15 "contemplate[s] maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." Ibid. Therefore, "it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures which must be taken to conform with the statute." Ibid. Because in Polillo the fault rested in the public participation, and not in "any deliberative or executive action by the [public body]," it was unnecessary to void "hearings at which testimony and evidence were received," allowing the public body to "in its sound discretion utilize so much of the" existing "testimony and evidence . . . as it deems necessary" when readopting the improperly noticed action. Id. at 579-80.

The trial court appropriately ordered the Board to take corrective action as the Supreme Court did in Polillo. The record supported the court's finding that Coffee Associates called no witnesses to oppose the application at the 2022 meeting. DiMarco's argument that the court incorrectly stated no members of

the public appeared at the meeting is baseless—the parties to this appeal spoke at the meeting and the public had the opportunity to speak. That fact, coupled with the questions Three Y's experts answered from members of the public in 2021, do not suggest the Board "deprived" anyone of access. Forcing the Board to reevaluate Three Y's application anew serves no constructive purpose. See Gandolfi v. Town of Hammonton, 367 N.J. Super. 527, 540 (App. Div. 2004) (noting the OPMA "balance[s] the rights of an informed citizenry against the need of government to function effectively" (citations omitted)).

The Board's curative action on remand complied with Polillo. Before voting on the 2022 Resolution, the Board's counsel confirmed on the record that the two new Board members had certified in writing that they reviewed the 2021 hearing transcripts, satisfying the voting eligibility requirements set forth in the MLUL for officials in their situation. See N.J.S.A. 40:55D-10.2; Mercurio v. Delvecchio, 285 N.J. Super. 328, 331-34 (App. Div. 1995) (affirming the zoning board's vote in similar circumstances). While the parties did not provide the Board members' certifications, nothing in the record contradicts their representations. As for the appended resolution's discrepancies, plaintiffs appropriately criticize the Board for its carelessness. But the trial court did not

err in excusing three mistaken clauses in a fourteen-page resolution whose contents otherwise uniformly supported granting the variances requested.

Finally, the trial court determined Coffee Associates' OPMA challenge time-barred, as the statute required its complaint be filed within forty-five days of the Board's decision. See N.J.S.A. 10:4-15(a) ("provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public"). Coffee Associates did not raise an OPMA challenge to the 2021 Resolution until March 2022, ten months after it was published in June 2021, and did not request any extension of the forty-five-day deadline. DiMarco did not raise his OPMA challenge to the 2021 Resolution until filing his second complaint in May 2022.

Since plaintiffs did not address the timeliness issue on appeal, they waived any response to defendants' argument that the court correctly determined the OPMA challenge was time-barred. See N.J. Dep't of Env't Prot. v. Alloway Township, 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (noting an issue not briefed on appeal is deemed waived). The trial court, however, misapplied the time bar, though this error does not alter our affirming its ruling that plaintiff's complaints were properly dismissed. See Hayes v. Delamotte, 231 N.J. 373, 387

(2018) ("A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning.").

Contrary to the court's finding, DiMarco cited the OPMA to void the Board's action in his first complaint, which this court concluded was not time-barred because "the interest of justice" warranted extending the statutory deadline for complaints in lieu of prerogative writs under Rule 4:69-6(c). DiMarco, slip op. at 2-3. While Coffee Associates did not rely upon the OPMA in its initial complaint, it filed the complaint on July 19, 2021, within forty-five days of both possible publication dates of the notice of decision. Thus, under the OPMA, Coffee Associates timely challenged the 2021 Resolution by bringing "a proceeding in lieu of prerogative writ . . . within 45 days after the [2021 Resolution was] made public." See N.J.S.A. 10:4-15(a).

Board's Grant of Height Variance

Interestingly, only DiMarco, who does not live in the immediate neighborhood of the development project—unlike where Coffee Associates' property is situated—argues the Board and trial court erred in granting Three Y the height variance. He argues the variance was granted without determining if it would cause substantial detriment to surrounding properties. See Medici v. BPR Co., 107 N.J. 1, 22 n.12 (1987) (citing Yahnel v. Jamesburg, 79 N.J. Super.

509, 519 (App. Div. 1963)). He claims there was no testimony focusing on the development project's impact on Coffee Associate's property: the shadow cast; blocked sunlight; and blocked east facing views.

DiMarco argues the Board improperly found the height variance would not substantially impair the zoning ordinance's purpose and intent. He posits the mayor and council carefully crafted each zone's boundaries and height restrictions to account for elevation changes as one approaches the Palisade Cliffs to give all properties in the area views of the Hudson River and New York skyline. He maintains the development project provides the same benefits without a height variance, and Three Y did not specifically prove the variances would either enhance the project's benefits or reduce its detriments to the surrounding area.

DiMarco likens the Board's failings to the conduct challenged in Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 468 (App. Div. 2015), where this court concluded the zoning board inadequately limited its analysis to a proposed development's aesthetic benefits. The Board could not only consider Edgewater's population growth and changing local needs; it had to explicitly confront the possibility that the requested height variance would interfere with the zoning ordinance's intent and purpose.

A-1020-22

In responding to these arguments, the Board and Three Y maintain the record supports the Board's decision to grant the height variance. Three Y presented four experts' testimony detailing the development project's architectural, traffic, and urban planning implications, and adjusted its proposal based on public comments. Its planner testified as to the final height's potential effect on sunlight, air, and open space, and the Board accepted his testimony as credible. Based on the record, the Board determined the development project's final height was consistent with the surrounding neighborhood's character, noting the Metropolitan, a fourteen-story apartment across the street, was taller than the proposed hotel. The Board memorialized its factfinding process in the 2021 Resolution, identifying relevant aspects from each witness's testimony. Three Y also adds DiMarco incorrectly claims the trial court should have considered evidence outside the record when deciding whether the Board had sufficient evidence warranting its decision.

The MLUL permits zoning boards to grant a variance "[i]n particular cases for special reasons" to allow "a height of a principal structure which exceeds by 10 feet or 10% the maximum height permitted in the district for a principal structure." N.J.S.A. 40:55D-70(d)(6). To obtain a use variance, an applicant must satisfy the principles enunciated in Medici, 107 N.J. at 21, which requires,

like the request for a height variance, a showing of special reasons for the variance (positive criteria) as well as a showing that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance (negative criteria).

While the party seeking a use variance initially bears the burden of proof, Price v. Himeji, LLC, 214 N.J. 263, 286 (2013), on appeal, the burden of proof shifts to the party challenging the zoning board's decision, Dunbar, 233 N.J. at 558. Thus, plaintiffs must show the Board's decision is not "fairly sustainable by the record." Leon N. Weiner & Assocs. v. Zoning Bd. of Adjustment, 144 N.J. Super. 509, 520 (App. Div. 1976).

The record demonstrates the Board "followed the statutory guidelines and properly exercised its discretion" when approving Three Y's application. See Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001). DiMarco tries to minimize the extensive testimony the Board considered by posing "what ifs." But Three Y's experts' testimony was consistent with the record's supporting documents. See Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 42-43 (App. Div. 2003). The Board found these experts credible and afforded their opinions the weight it felt was appropriate. See ibid. DiMarco

makes no showing that the Board abused its discretion in relying on their testimony.

DiMarco's argument that the Board misapplied the positive and negative criteria to the record is equally unpersuasive. The Board identified facts addressing both criteria. The proposed uses—hotel, multi-family homes, and restaurants—are in line with the objectives set forth in the zoning ordinance for the mixed zone, which include "allow[ing] for an expansion of the types of uses permitted in the area to encourage redevelopment" and "establish[ing] economic anchors to draw steady crowds, create an active street life[,] and encourage spinoff businesses." Edgewater, N.J., Code § 240-117.3(A)(1), (6).

Three Y demonstrated "special reason[s]" grounded in "a peculiar feature" specific to the property. Vidal v. Lisanti Foods, Inc., 292 N.J. Super. 555, 565 (App. Div. 1996). Its planning expert described how the development project accommodated the neighborhood's existing makeup, with a taller building nearer to neighboring high-rises and a shorter building next to a structure of similar height. This design ensured surrounding buildings would still receive sufficient sunlight. There was also testimony that the development project would be shorter than the surrounding buildings, including the Metropolitan across the street and would not block views from the Palisade Cliffs to the west.

Accordingly, the trial court properly affirmed the Board's decision, which was not arbitrary, capricious, or unreasonable in granting Three Y's height variance.

To the extent we have not specifically addressed any of plaintiffs' arguments, it is because we conclude they have insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-1020-22