**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1225-24

VALERIE'S GARDEN, LLC,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

CITY OF ELIZABETH,

    Defendant-Appellant/
    Cross-Respondent.

_____

        Submitted January 14, 2026 – Decided May 6, 2026

        Before Judges Gummer and Vanek.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2622-23.

        William R. Holzapfel, City Attorney, attorney for appellant/cross-respondent (Jorge Estrada, Special Counsel, on the briefs).

        Fox Rothschild LLP, attorneys for respondent/cross-appellant (Fruqan Mouzon, of counsel and on the briefs).

PER CURIAM

This action in lieu of prerogative writs arises from defendant City of Elizabeth's denial of a resolution of support for plaintiff Valerie's Garden, LLC's application for a "Class 5 Adult Use Cannabis Retail Micro Business and Consumption Lounge." Defendant appeals March 21, 2024 orders denying plaintiff's first summary-judgment motion, denying defendant's first cross-motion for summary judgment, and remanding the application to defendant's City Council. Defendant also appeals a November 22, 2024 order granting plaintiff's second summary-judgment motion, denying defendant's second cross-motion for summary-judgment, and requiring the City Council to pass a resolution of support for the application. Plaintiff cross-appeals, challenging one aspect of the trial court's decision granting its second summary-judgment motion. Based on our de novo review, we affirm the March 21, 2024 orders, reverse the November 22, 2024 order, vacate the resolution-of-support provision, and remand for entry of an order granting summary judgment to defendant.

I.

In 2021, the Legislature enacted the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-24 to -56, "after voters adopted an amendment to the New Jersey Constitution

2

legalizing the possession, consumption, and commercialization of cannabis and products containing it by" adults.  State v. Gomes, 253 N.J. 6, 23 (2023); see also N.J. Const. art. IV, § 7, ¶ 13 (amended 2021).  "CREAMMA articulates a legislative intent 'to adopt a new approach to our marijuana policies . . . in a similar fashion to the regulation of alcohol for adults.'"  Gomes, 253 N.J. at 25 (omission in original) (quoting N.J.S.A. 24:6I-32(a)).  CREAMMA authorizes "the cultivation, manufacture, sale, and possession of cannabis in New Jersey" and sets forth "a framework for the operation and licensing of cannabis industry businesses."  Higher Breed NJ LLC v. City of Burlington Common Council, ___ N.J. Super. ___, ___ (App. Div. 2026) (slip op. at 13).

CREAMMA also created the Cannabis Regulatory Commission (CRC) to administer the statewide licensing framework, award licenses, regulate the cultivation and sale of cannabis, and oversee compliance with laws and regulations.  See N.J.S.A. 24:6I-34(b).  CREAMMA requires a business intending to sell cannabis to obtain from the CRC a cannabis retailer license (CRL) for the premises where cannabis will be sold.  N.J.S.A. 24:6I-42. CREAMMA's corresponding regulatory framework, N.J.A.C. 17:30-1.1 to -8.3, sets forth the documentation a prospective cannabis business must submit to the CRC in its application.  That documentation includes "[p]roof of local support,

3

which shall be demonstrated by a resolution adopted by the municipality's governing body . . . ." N.J.A.C. 17:30-7.10(b)(9).

CREAMMA gives municipalities discretion to opt out of cannabis activity or, if they opt in, to control the "location, manner, and times of operation" of cannabis-related establishments through local ordinances. N.J.S.A. 24:6I-45; see also N.J.A.C. 17:30-5.1; Higher Breed, ___ N.J. Super. at ___ (slip op. at 14); Botteon v. Borough of Highland Park, 478 N.J. Super. 452, 458 (App. Div. 2024). Defendant chose to permit the operation of cannabis-related businesses in certain parts of the City and enacted ordinances regulating those businesses, including Ordinance No. 5500, codified in Chapter 17.36 of the Code of the City of Elizabeth (Code), and Ordinance No. 5581, codified in Chapter 5.26 of the Code.[1]

---

[1] N.J.A.C. 17:30-5.1(n) permitted a municipality to "authorize or prohibit, through the enactment of an ordinance or regulation, the operation of a locally endorsed cannabis consumption area . . . ." When plaintiff filed its application, Section 5.26.170 of the Code authorized the City's chief license inspector (CLI), under certain circumstances, to issue "a cannabis consumption area endorsement to a Class 5 Retail cannabis business license." The City Council subsequently determined "cannabis consumption areas should be disallowed" and repealed that code provision and other related provisions by an ordinance adopted in January 2025. See Elizabeth, N.J., Ordinance 6095 (Jan. 29, 2025).

Section 17.36.210 of the Code provides for a Cannabis Retail Overlay (CRO) Zone and identifies, by block and lot number, specific parcels eligible for use as "[r]etail cannabis establishments licensed pursuant to N.J.S.A. 24:6I-42 with a 'Class 5 Cannabis Retailer license' for adult-use sales." Code § 17.36.210(C)(1)-(2). Parcels within the CRO Zone are subject to certain bulk requirements and design standards. Code § 17.36.210(C)(4). Any deviation from those requirements and standards requires "c" variance relief under N.J.S.A. 40:55D-70c of the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -171. See Code § 17.36.210(C)(4)(i).

Section 5.26.070 of the Code requires a CRL applicant to submit an "[i]nitial cannabis business license application," along with information specified in that section and an application fee pursuant to Section 5.26.080. If the application is complete, the CLI sends it to the City's chief of police, director of the department of planning and community (planning director), health officer, and fire official for "review, comment, and recommendation." See Code § 5.26.090. If any of those municipal officials recommend denial of the application, the official must "set forth the specific reasons for denial in writing to the [CLI]." Ibid.

5

Under Section 5.26.100 of the Code, the CLI may deny an application only if: the applicant "materially failed to complete any portion of the application" or pay the application fee, one of the four reviewing officials "issued a written recommendation for denial" of the application, or "[i]ssuance [of the license] would be contrary to the public health, safety, and welfare of the residents of the city." If the CLI denies an application, the denial must "be communicated to the applicant in writing." See Code § 5.26.100. Alternatively, under Section 5.26.110 of the Code, the CLI must "request a resolution from the city council in support of an applicant's state cannabis license application" if an applicant has "requested such a resolution of support in writing," provided all required information, and paid all required fees; the application has been investigated by the identified municipal officials; and "[t]here exists no basis for the denial of the application pursuant to [S]ection 5.26.100."

II.

Plaintiff wanted to operate a cannabis-related business at 600-602 Spring Street in Elizabeth. The property at that address was located within the City's CRO Zone. See Code § 17.36.210(C)(1). It contained a one-story retail building as well as an adjacent two-story residential building. Plaintiff planned to construct an addition to the retail building.

6                                                                    A-1225-24

On April 5, 2023, plaintiff submitted a zoning permit application, seeking municipal approval for "a Cannabis Retail Class 5 Micro business." Plaintiff did not state in that application it also intended to operate a cannabis consumption lounge. Defendant's zoning officer responded in writing later that day. He confirmed the property was in the CRO Zone and, therefore, was "a suitable site for the cannabis establishment." (Emphasis omitted). He explained that although the property might be suitable for that use, plaintiff still had to comply with all applicable bulk requirements, design standards, and other zoning provisions and that any deviation from those requirements and standards would require an application for a "c" variance. He identified certain standards the site did not meet and advised plaintiff it would have to obtain Zoning Board approval. He informed plaintiff "the change of use w[ould] trigger a site plan." He also stated that "to obtain a local cannabis license," plaintiff first had to obtain a resolution of support from the City and a state license. (Emphasis omitted).

On April 13, 2023, plaintiff applied to the City for a license to operate a "Class 5 Adult Use Cannabis Retail Micro Business and Consumption Lounge." In support of the application, plaintiff submitted architectural plans and drawings, a traffic study, an environmental and odor mitigation plan, and a

"community impact, social responsibility, and research statement."  The architectural plans included a cannabis consumption area.

The City's CLI forwarded plaintiff's application to the appropriate municipal officials for review and comment pursuant to Section 5.26.090 of the Code.  None of officials recommended denial.  The planning director and the health officer reported no objection.  The fire official stated he did not object, "[a]ssuming all [renovation] work will be permitted and approved through the proper channels."  Although the police chief identified concerns regarding the proposed business's proximity to a bar and park and potential traffic and odor issues, he did not recommend denial and instead suggested additional security, safety, and community-engagement efforts.

In a May 31, 2023 memorandum to the planning director, the CLI determined plaintiff's application had met all requirements for approval under Section 5.26.110 and requested he recommend the City Council issue a letter of support to the CRC.  In a June 8, 2023 letter, the planning director asked the City Council to adopt a resolution of local support for plaintiff's application.

The City Council considered plaintiff's application during a June 27, 2023 meeting.  Plaintiff's chief executive officer, Rejane Ferreira, spoke in favor of the application and requested the City Council's support.  Councilman William

Gallman, Jr. opposed adopting the resolution, telling the City Council he had "spoke[n] to the young man advising him that he cannot support this project, or any project, when it is too close to any residence." The identity of the "young man" is not clear from the record. The City Council voted to deny the resolution of support by a five-to-one vote.

On August 9, 2023, plaintiff filed a verified complaint in lieu of prerogative writs, seeking an order revoking the denial of its application and requiring defendant to grant approval or, alternatively, "remanding to the City for further hearings prior to determining whether to approve or deny the [l]icense." Plaintiff also sought to enjoin defendant "from proceeding with further permitting and/or licensing processes . . . for Class 5 cannabis adult-use retailer licenses pending the entry of final judgment in this action." Plaintiff asserted the City Council's denial was arbitrary, capricious, and unreasonable and "against the weight of the evidence in the record." According to plaintiff, the City Council's "sole reason for denying [its] [l]icense and resolution in support thereof – that the dispensary is too close to residences – [wa]s undermined by" its prior approvals of five other retail cannabis dispensaries that were either closer to or in the same proximity to residences.

A-1225-24

After engaging in some discovery, plaintiff moved and defendant cross-moved for summary judgment. After hearing argument, the court entered two orders on March 21, 2024, denying both parties' motions, remanding plaintiff's application to the City Council, and directing the City Council "to provide sufficient finding in support of its conclusion to approve or deny the resolution of support on remand." In an accompanying statement of reasons, the court found defendant had not provided to plaintiff the written denial required in Section 5.26.100 of the Code and "[n]othing in the record explains Councilman Gallman's position that plaintiff's business is located too close to residences." The court concluded it was "necessary to remand this matter to the . . . City Council to create a more complete record for the basis of this denial. Without a complete record, this [c]ourt cannot determine if the reason for denial is arbitrary and capricious," citing <u>Big Smoke LLC v. Township of West Milford</u>, 478 N.J. Super. 203 (App. Div. 2024).

On April 9, 2024, the City Council adopted a six-page resolution affirming its June 27, 2023 vote declining to adopt a resolution of support for plaintiff's application. The City Council found plaintiff had not complied with the instructions in the zoning officer's April 5, 2023 letter and the "cannabis consumption area" outlined in the submitted plans did "not comport with the

City's Land Development Code"; it could not "reasonably rely" on the traffic study plaintiff had submitted because it was based on "faulty assumptions," including not "consider[ing] the effects of the proposed cannabis consumption lounge" and "focusing solely on the retail dispensary portion of the plans"; the "parking available for the proposed cannabis retail and consumption lounge [were] insufficient to accommodate patrons to the site"; the "special HVAC systems" specified in plaintiff's "odor mitigation plan" were not reflected in plaintiff's architectural plans; the "proposed location [wa]s abutted by multi-unit residences on its north and west sides, each with less than [six]-feet of space between," and that "close proximity [wa]s deleterious to the health and welfare of the residents"; and plaintiff's "community impact statement [wa]s focused on the 'cannabis community' rather than the host local community" and plaintiff had "shown a lack of engagement with the local community, rejecting invitations from the Elizabeth Police Department and a member of th[e City Council] to meet with residents to address their concerns and form relationships with residents and local stakeholders." The City Council concluded "the burdens placed upon the local community outweigh the benefits that would be realized by a retail cannabis business at the proposed location" and that "in furtherance

11

of its obligation to protect the health, safety, and welfare of the residents," it had "properly voted to decline" to support plaintiff's cannabis license application.

Plaintiff moved and defendant cross-moved for summary judgment. After hearing argument, the court entered a November 22, 2024 order with an accompanying statement of reasons granting plaintiff's motion, denying defendant's cross-motion, and directing the City Council to "pass . . . a resolution of support in favor of [p]laintiff's retail cannabis license application." The court found the City Council had "acted arbitrarily, capriciously, and unreasonably in denying plaintiff's request for a resolution of support."

Defendant appeals the March 21, 2024 and November 22, 2024 orders. In its notice of cross-appeal, plaintiff stated it was appealing the November 22, 2024 order but was challenging only the "section of [the] written opinion whereby [the] trial court concluded that [the] City . . . had the discretion to deny plaintiff's resolution of support for reasons not listed in the City's ordinances."

III.

When reviewing summary-judgment orders, we apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). Under that standard, a court grants summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

Applying that standard, we discern no basis to reverse the March 21, 2024 orders and, accordingly, we affirm those orders. The CLI determined plaintiff's application had met all requirements for approval under Section 5.26.110, and the planning director asked the City Council to adopt a resolution of local support for plaintiff's application. The City Council nevertheless voted against adopting a resolution of support. When the court was considering the parties' first motion and cross-motion for summary judgment, the reasons for that determination were not clear from the record.

Before the remand, the record did not contain a transcript or resolution setting forth the reasons for the City Council's denial. The record contained only two copies of a proposed resolution in favor of supporting plaintiff's application. The word "DEFEATED" was placed on both copies. One copy referenced Councilman Gallman's conversation with "the young man advising him that he cannot support this project, or any project, when it is too close to any residence."

Neither document otherwise explained the City Council's decision.  On that record, the court reasonably concluded it could not "determine if the reason for denial [wa]s arbitrary and capricious" and appropriately remanded the application to the City Council "to create a more complete record . . . ."

Defendant faults the court for purportedly ignoring the rebuttable presumption of validity that applies to municipal actions.  Although "[m]unicipal actions enjoy a presumption of validity," that presumption is not absolute.  Big Smoke, 478 N.J. Super. at 217 (quoting Bryant v. City of Atl. City, 309 N.J. Super. 596, 610 (App. Div. 1998)).  A court may "disturb a 'municipal action . . . if it is arbitrary, capricious or unreasonable.'"  Ibid. (omission in original) (quoting Bryant, 309 N.J. Super. at 610).  Moreover, "[a]ction by a municipal governing body is not sustainable upon a mere perfunctory finding phrased in conclusionary language."  W. Point Island Civic Ass'n v. Twp. Comm. of Dover, 93 N.J. Super. 206, 211 (App. Div. 1966).  In remanding the application, the court was not ignoring the presumption of validity; it was attempting to obtain information necessary to determine whether the City Council had acted arbitrarily, capriciously, or unreasonably in denying plaintiff's application.  See Higher Breed, ___ N.J. Super. at ___ (slip op. at 21-

14

22) (finding "remand necessary for the City Council to address relevant concerns . . . and for the issuance of a new resolution providing the basis for its decision").

Defendant also contends that in remanding the application, the trial court "improvidently" awarded "mandamus relief." (Emphasis omitted). We disagree. In remanding the application, the court accorded the City Council an opportunity "to provide amplified findings in support of its conclusion to approve or deny the [r]esolution." And the City Council accepted that opportunity, explaining the bases for its denial in the April 9, 2024 resolution.

In its cross-appeal of the November 22, 2024 order, plaintiff faults the court for considering those bases and for not finding the City Council lacked authority to deny plaintiff's application once the CLI determined plaintiff's application met all requirements for approval under Section 5.26.110. We recognize "appeals are taken from judgments, not opinions" and that generally parties do not have a right to appellate review of an order in their favor. Price v. Hudson Heights Dev., LLC, 417 N.J. Super. 462, 467 (App. Div. 2011). However, given our de novo review of the court's summary-judgment order, we deem it appropriate to consider plaintiff's argument. Having considered it, we agree with the court's conclusion that the City Council was "afforded an implied

15

power to refuse to adopt a resolution of support" and was not required by ordinance to "pass a resolution of support following the findings of the CLI."

"Although a municipality's informal interpretation of an ordinance is entitled to deference, . . . that deference is not limitless." Bubis v. Kassin, 184 N.J. 612, 627 (2005). "[T]he meaning of an ordinance's language is a question of law that we review de novo." Ibid.; see also Big Smoke, 478 N.J. Super. at 221. In performing that review, we are guided by the familiar principles of statutory interpretation, which apply equally to our interpretation of municipal ordinances. See State v. Williams, 467 N.J. Super. 1, 4 (App. Div. 2021) ("The established rules of statutory construction govern the interpretation of a municipal ordinance." (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170, (1999))).

When interpreting a statute, we "determine and give effect to the [legislative] intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492

16

(2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "[W]e 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'" Fuster v. Twp. of Chatham, 259 N.J. 533, 547 (2025) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

Nothing in the applicable ordinances or CREAMMA gives an applicant an automatic right to a resolution of support. At most, an applicant who has met the requirements of Section 5.26.110 is entitled to a request by the CLI for a resolution of support. Plaintiff's interpretation would render meaningless the language in Section 5.26.110 of the Code providing for the CLI to "request a resolution from the city council in support of an applicant's . . . application." (Emphasis added). Thus, as we held in Big Smoke, "the determination [to adopt a resolution of support] is within the discretion of the municipality so long at its actions are not arbitrary, capricious or unreasonable." 478 N.J. Super. at 222; see also Higher Breed, ___ N.J. Super. at ___ (slip op. at 19, 21) (finding the "Council had the authority to reasonably grant or deny an ROS application" but

"part[ing] ways with the [] judge's decision that issuance of the [resolution of support] was mandated").

The court concluded the City Council had "acted arbitrarily, capriciously, and unreasonably in denying plaintiff's request for a resolution of support." In so ruling, the court focused on the City Council's concerns regarding plaintiff's intention to open a cannabis consumption lounge. The court faulted defendant for "intertwin[ing] the process for receiving approval for [a] Class 5 Retail License and approval for a Cannabis Consumption Area . . . ." But it was plaintiff who intertwined those considerations when it submitted an application for a license to operate a "Class 5 Adult Use Cannabis Retail Micro Business and Consumption Lounge." (Emphasis added). That plaintiff submitted an application for a license for both a cannabis retail business and a cannabis consumption lounge is an undisputed fact demonstrated in the record by plaintiff's application.

The court incorrectly viewed the question before the City Council as limited to "whether plaintiff is entitled to a resolution of support to obtain a Class 5 Retail License—not to open a consumption lounge." Because plaintiff included the cannabis consumption lounge as part of its application, the City Council acted within its discretion in considering that aspect of the application

18

when deciding whether to issue a resolution of support. In its resolution, the City Council identified concerns about plaintiff's application related to the inclusion of the cannabis consumption lounge, including the failure of the traffic study to "consider the effects of the proposed" lounge and the failure to include in the architectural plans the "specified special HVAC systems" provided for in the odor mitigation plan.

That plaintiff may now be willing to abandon its plan for a consumption lounge does not change the fact that the application presented to and considered by the City Council contained plans for a consumption lounge. Viewed through the actual scope of the application submitted by plaintiff, we are unpersuaded the record contains sufficient evidence to support the court's conclusion the City Council acted arbitrarily, capriciously, or unreasonably in declining to issue a resolution in support of plaintiff's application. See Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965) (finding "public bodies, because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion"). Accordingly, we reverse the November 22, 2024 order.

19

In sum, we affirm the March 21, 2024 orders and reverse the November 22, 2024 order. In reversing the November 22, 2024 order, we vacate the provision of the order requiring the City Council to pass a resolution of support for plaintiff's application. We remand for entry of an order granting summary judgment to defendant.

To the extent we have not expressly addressed any argument presented by the parties, it is because we do not need to reach the argument or because the argument is not of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part; reversed in part; vacated in part; and remanded for entry of an order granting summary judgment to defendant. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division